# Markham, *et al. v.* Wallace.

*Bill to Enjoin Ejectment, and to Declare an Instrument an Equitable Mortgage.*

(Decided May 19th, 1906. 41 So. Rep. 304.)

*Mortgage; Equitable Liens; Sale Under Executions; Priorities.*—An unmarried man executed to his creditor an instrument, in form a mortgage, unacknowledged and unattested, to secure a recited indebtedness; the instrument contained apt words of conveyance and was recorded. Held, such an instrument was an equitable mortgage enforcable in a court of equity against subsequent purchasers of the mortgagor, with notice of the equity.

APPEAL from Lawrence Chancery Court.
Heard before HON. W. H. SIMPSON:

[Markham, *et. al.* v. Wallace.]

W. K. Wallace filed this bill against Elizabeth Markham, et als., as the heirs of John Petit, deceased, to enjoin an ejectment suit and to declare an instrument an equitable mortgage. The facts sufficiently appear in the opinion of the court. There was decree for complainant and respondents appeal.

KIRK, CARMICHAEL & RATHER, for appellants.—Under the allegations of the bill the execution lien attached on Nov. 19, 1881.—§§ 3181 and 3210, code 1876. A purchaser at that sale acquired a title superior to that of complainant by his deed of date Dec. 7, 1881.—*Watson v. State,* 78 Ala. 363; *Keele v. Larkin,* 72 Ala. 493; *Dryer v. Graham,* 58 Ala. 623. This lien binds all property subject to levy and sale.—3 Mayfield, p. 617. A purchaser of the equity of redemption in mortgaged land at execution sale against the mortgagor acquires a title on which he may maintain ejectment against the mortgagor in possession and the latter cannot defeat the action by setting up an outstanding legal title in the mortgagee.—*Cotton v. Carlisle,* 85 Ala. 175; *Wilkerson v. May,* 69 Ala. 33.

The allegations of the bill of complaint and of the instrument show there was no consideration for the contract. And there was, therefore, no mortgage nor a contract for mortgage which equity could enforce as an equitable mortgage.—20 A. & E. Ency. of Law, p. 920; 63 Ala. 366; *Thompson v. Dill,* 30 Ala. 444; *Florence C. & I. Co. v. Field,* 104 Ala. 480; *Morningstar v. Querns,* 141 Ala.; *Holland v. Bonds,* 53 Ala. 88. The respondents being the owner of the equity of redemption were entitled to have all the property over and above the amount required to pay the mortgage debt returned to them.—*Lovelace v. Webb,* 62 Ala. 271; *Fourch v. Swain,* 80 Ala. 151; *Childress v. Monette,* 54 Ala. 373; *Kelly v. Longshore,* 78 Ala. 205.

The bill shows no cause for equitable interference.—*Lyttle v. Sandefur,* 93 Ala. 396; *Rea v. Longstreet,* 54 Ala. 294.

If the debt secured by the mortgage had not been paid by the life tenant then it was barred by prescription.—*McArthur v. Corry,* 32 Ala.

W. W. CALLAHAN, for appellee.—The instrument was an equitable mortgage.—*Woodruff v. Adair,* 131 Ala. 531; *Newlin, et als. v. McAfee,* 64 Ala. 357; 3 Pomeroy Eq., § 1237 and note. The record of the instrument was sufficient to give notice.—*O'Neil v. Seixas,* 85 Ala. 80; *Truss v. Harvey,* 120 Ala. 640. The assignment was sufficient in equity.—*Wells v. Cody,* 112 Ala. 278; *O'Neil v. Seixas, supra; Lowrey v. Paterson,* 75 Ala. 109; *Griffin v. Carmack,* 36 Ala. 695; 57 Ala. 28; 59 Ala. 186.

The mortgage being an equitable one it is necessary to resort to equity to enforce it.—*Eufaula National Bank v. Pruitt,* 129 Ala. 470. The relation between the mortgagor and the mortgagee is not fiduciary where the mortgage does not convey the legal title nor give any control to the mortgagee of the estate.—*DeMartin v. Phelan,* 115 Cal. 538. The legal effect of the sale by Sims of his equity of redemption to Wallace was the equivalent of a formal foreclosure.—*Peagler v. Stabler,* 91 Ala. 311; *Stoutz v. Rous,* 84 Ala. 309; *King v. Churchman,* 89 Am. Dec. 372. Even if this mode of foreclosure would not be recognized equity would keep alive Wallace's mortgage. —*Fouche v. Swain,* 80 Ala. 151. At the date of the sale by Sims to Wallace of his equity of redemption the mortgage day had passed, so Petit got nothing at the sheriff's sale in March 1882, as only the equity of redemption was levied upon.—*Shaw v. Lindsey,* 60 Ala. 344; *Electric L. Co. v. Rust,* 23 So. Rep. 751; *Lindsey v. Cooper,* 94 Ala. 170. Although the debt was barred the mortgage was enforcible.—*Ware v. Curry,* 67 Ala. 274; *Chapman v Lee,* 64 Ala. 483; *Hood v. Hammond,* 128 Ala. 569. There is no such thing as a statute of prescription, but there is a rule of prescription aside from the statute of limitation.—*Jefferson v. Pettus,* 132 Ala. 674.

Appellants are too late in asserting an equity of redemption.—*Woodruff v. Adair,* 131 Ala. 531; *Lovelace v. Hutchinson,* 106 Ala. 417. Such delay waives irregularity, illegality, unfairness, oppression and fraud.— *Pate v. Henson,* 104 Ala. 603; *Cowan v. Sapp,* 74 Ala. 44; s. c. 81 Ala. 525; *Boling v. Gantt,* 93 Ala. 90. In the absence of a particular feature to mark the case seasonable

action is fixed at two years.—*Ezzell v. Watson,* 83 Ala. 120; *Gorrey v. Clements,* 94 Ala. 344; *Mason v. Mortgage Co.,* 124 Ala. 347. After more than twenty years of uninterrupted possession by Wallace there is a presumption of sale and conveyance of the property or anything else necessary to give repose to the title.—*Dawson v. Hoyle,* 58 Ala. 44. The legal title passed by Sim's deed to Wallace and the owner of the equity of redemption acquired no rights except to redeem.—*Robinson v. Price,* 118 Ala. 297; *Childers v. Monette,* 54 Ala. 319.

Appellants cannot invoke the doctrine of subrogation and marshalling of securities. Petit got only Sim's interest.—§ 3207 subd. 3, code 1876; *Lovelace v. Webb,* 62 Ala. 279. Nor can they require Wallace to proceed against the homestead of Sims before going on the other land.—*Talladega v. Browne,* 128 Ala. 557; *Roy v. Adams,* 45 Ala. 168. Appellants rights are barred by laches, staleness of demand and the statute of limitations.— *Woodstock Iron Co. v. Fullenwider,* 87 Ala. 584; *Lansden v. Bone,* 90 Ala. 446; *Lowry v. Davis,* 8 So. Rep. 76; *Robinson v. Pierce,* 118 Ala. 273.

A remainderman, pending possession of the life tenant, can maintain an action to quiet title.—*Worthington v. Miller,* 134 Ala. 421.

There is no equity of redemption in a mortgagor of an equitable mortgage.—3 Pomeroy Eq. (2d Ed.) §§ 1219, 1188, 1187, 1179-80; *Childers v. Monette,* 54 Ala. 309. Petit acquired no rights under his judgment, execution, sale and deed. The levy created at most a mere lien and did not divest title out of Sims.—*Frye v. Bank of Mobile,* 16 Ala. 382. Having levied on the equity of redemption in reversion he acknowledged the validity of the mortgage and acquired nothing other than the thing levied on.—*Gassenheimer v. Moulton,* 80 Ala. 527. The cross bill might have been dismissed ex mero motu.—*Jackson v. Knox,* 119 Ala. 320.

HARALSON, J.—It appears that the bill was filed on February 19, 1902, by complainant, William K. Wallace, against Elizabeth M. Markham and others, defendants, the heirs at law of J. T. Petit, deceased.

[Markham, *et. al.* v. Wallace.]

It is alleged, that on May 15, 1873, E. T. Simms was indebted to James H. McDonald in the sum of $550.00, evidenced by his promissory note of that date, payable twelve months after date, and that on May 23, 1873, the said E. T. Simms, for the purpose of securing the payment of said note, executed to said McDonald, "a written instrument or mortgage on the lands" described in the bill, which was filed for record, on the 18th of June, 1875, and was duly recorded in the probate office, on the 13th of March, 1876. Said instrument, in form a mortgage, was not attested by a witness, nor acknowledged by said Simms.

It is further shown, that on the 3rd of March, 1881, said note and mortgage were unsatisfied, and that Thomas D. Simms was the owner and in possession of said note and mortgage, and on said date, said·Thomas D. Simms delivered said note and mortgage, and transferred the same without recourse to complainant, for a consideration of about $800.00.

It is further shown, that E. T. Simms was, at the time of the execution of said note and mortgage an unmarried man; and on April 4, 1896, he entered into a marriage contract with Mollie De Graffenried, whereby he settled by deed upon her, for the term of her natural life, the lands described; that said marriage contract was in writing, and provided, that the conveyance to said Mollie De Graffenried, was made subject to the mortgage ·of $550.00· executed by said E. T. Simms to said McDonald on said lands described in section 10 of the bill; that upon the death of said Mollie, the lands were to revert to the said E. T. Simms, his heirs and assigns forever. This marriage .contract and conveyance were duly acknowledged on the 20th of the same month.

It is further shown, that on the 7th of December, 1881, said E. T. Simms and his wife, Mollie, for and in consideration of $1,600.00, paid to them by William K. Wallace (the complainant), sold and conveyed to him the lands described in their deed to him, consisting of 400 acres, (or one-half of the 800 acres) of the lands described in said instrument or mortgage by said E. T. Simms

to said McDonald, and in section 2 of the bill, which said lands are the subject of litigation in this suit. This deed was filed for record, on the 5th of January, 1882, and was recorded on the 7th of that month.

It is alleged that the note and mortgage referred to in the bill, were owned by complainant, W. K. Wallace, on the 7th of December, 1881, the date of the deed from said E. T. Simms and wife to him; that said mortgage only conveyed an equitable interest in the lands to said McDonald, and the transfer to complainant did not contain any apt words of conveyance; that in order to foreclose said mortgage, it would have required a bill in equity, which would have entailed a great expense, annoyance and delay, and to prevent this, complainant agreed to satisfy the mortgage and pay Mrs. Mollie F. Simms, in cash, the difference between the mortgage debt, and sixteen hundred dollars, the expressed consideration of the deed,—to procure her signature thereto, and that Mrs. Simms was claiming rights in said property under said marriage contract between herself and said E. T. Simms. It was also shown, that the true value of the lands conveyed to complainant by said Simms and wife, did not exceed the amount due on the mortgage; that the satisfaction of the mortgage indebtedness was all the consideration moving between complainant and E. ,T. Simms, and that all that was paid by complainant to said Mrs. Simms, was paid to acquire her signature to the deed, and a release of her alleged interest in said lands by virtue of her marriage contract, and thus by such arrangement and transaction avoid the litigation that would have necessarily followed her refusal to sign said deed.

It is again averred in the bill, that on October 24, 1881, Pettit & Simpson, a partnership composed of J. T. Pettit and William Simpson, recovered a judgment in the circuit court of Lawrence county against E. T. Simms in the sum of $1,092.30, and on November 19, 1881, execution was issued, and on March 17, 1882, the sheriff of the county, claiming to act by virtue of process issued on said judgment, executed to J. T. Pettit, as a purchaser at sheriff's sale, a deed to the lands in question.

The defendants, on the 9th of December, 1901, commenced in the circuit court of Lawrence county, their action to recover the possession of the lands in controversy, and this bill was to enjoin that action.

The chancellor rendered a decree granting relief to complainant, and decreed that the injunction theretofore granted in the cause be made perpetual; that the deed of Simms and wife of December 7, 1881, was effectual to pass and did pass to complainant the estate and interest of the grantors therein, both legal and equitable, against the claim of title asserted by respondents in their answer and cross-bill, and their cross-bill was dismissed; that the sheriff's levy and sale of the lands involved in this suit, conferred no right or title in said respondents, paramount to that of the complainant, Wallace, and the deed executed by the sheriff on the 17th of March, 1882, to J. T. Pettit was a cloud on complainant's title, and as such was cancelled and annulled. It should be added, that defendants filed a cross-bill on the theory that their right to the lands was superior to that of complainant.

The controlling question in this case is, whether the complainant has an equitable lien, right or claim to the lands described in the bill, superior to the lien claimed by defendant, which a court of equity will enforce. Upon that question, resort must be had to the instrument executed by E. T. Simms to J. H. McDonald, of date the 23d of May, 1873, and the deed by said Simms, and his wife Mollie, of date, the 7th of December, 1881, read in the light of the circumstances surrounding the parties at the time they were made. What purports to be a mortgage of the 23rd of May, 1873, as has appeared, was not witnessed or acknowledged. It had operative words of conveyance, and purported to be given to secure a note for $550.00 executed to McDonald by said Simms, on the 15th of May, 1873, eight days previous to said instrument, intended as a mortgage. As was said in *Newlin v. McAfee*, 64 Ala. 364, "The form of the agreement is not material: operative words of conveyance are not essential to the creation of a charge, or trust, which a court

of equity will enforce as a mortgage. It is the intention of the parties to charge particular property, rights of property, or credits, with the payment of debts, which the court will regard. When that intetntion is deducible from their agreement, the court will give effect to it, and the equity created will prevail against all others than innocent purchasers for value."

"Every written contract which shows an intention to charge some particular property, therein described and identified, with a debt or other obligation, creates an equitable lien on such property."—19 Am. & Eng. Ency. Law (2d Ed.) 13.

"The form or particular nature of the agreement which shall create a lien is not very material, for equity looks at the final intent and purpose rather than at the form; and if the intent appear to give, or to charge, or to pledge the property, real or personal, as a security for an obligation, and the property is so described that the principal things intended to be given or charged can be sufficiently identified, the lien follows. * * * The intent to give a security being clear, equity will treat the instrument as an executory agreement for such security."—3 Pom. Eq. Ju. § 1237.

"A parol agreement by a debtor that certain personal property belonging to him should stand good for his indebtedness, not accompanied by a delivery or change of possession, does not convey the legal title, but creates an equitable lien merely," which may be enforced by resort to a court of equity.—*Jackson v. Rutherford,* 73 Ala. 156; *Bush v. Garner,* 73 Ala. 166.

Upon the foregoing principles, it would seem there is no difficulty in declaring that the instrument of Simms to McDonald, of the 23d of May, 1873, created an equitable lien on the lands therein described in favor of said McDonald, which, under the facts stated, in the bill, accrued to the complainant, such as a court of equity will enforce, and of which, the defendants having notice, is superior to their claim arising from the purchase of their ancestor J. T. Pettit, under his execution against E. T. Simms, on the 17th day of March, 1882. Pettit purchas-

ed with notice of complainant's superior lien, derived and maintained under transfers and conveyances from said McDonald. If complainant's equitable lien was superior to defendants', there was no room for their cross-bill, which was properly dismissed by the court below.

We discover no error in the decree of the chancery court and it is affirmed.

Affirmed.

WEAKLEY, C. J., and DOWDELL and SIMPSON, JJ., concur.