No. 19,739.

T. J. ENGLISH, *Appellant*, V. H. A. SANBORN et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. MORTGAGE—*Oral Agreement to Execute—Equitable Lien.* One who had given a chattel mortgage on certain property to secure a note, and had agreed to replace this with one executed by himself and wife, used the same property to secure a loan to complete payment for a farm and then promised his debtor to give him a mortgage on the farm executed by himself and wife—but gave him only a mortgage signed by himself and not acknowledged, the wife refusing to join, but she, with her husband enjoying the fruits of such exchange of security. The only defense pleaded to plaintiff's action to subject the land to the lien of his debt was a general denial. *Held,* that as between these parties the land is subject to such lien.

2. SAME—*Foreclosure—Unrecorded Deed—Innocent Purchaser—Question for Jury.* The husband and wife conveyed the land two days before this suit was begun but the grantees did not record their deed until some time after service had been made. The evidence as to such grantees being innocent purchasers examined and held to have been such as to entitle plaintiff to its submission to the jury under proper instructions.

Appeal from Greenwood district court; ALLISON T. AYRES, judge. Opinion filed March 11, 1916. Reversed.

*Howard J. Hodgson,* of Eureka, for the appellant.

No appearance was made for the appellees.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued to have a certain mortgage declared a first lien on the land involved herein and to have such land sold and his indebtedness paid out of the proceeds. A demurrer to his evidence was sustained and he appeals.

The plaintiff owned a farm in Rice county on which the defendants, Sanborn and wife, were tenants. In February, 1913, Sanborn, having contracted to purchase a farm in Greenwood county, had a settlement with the plaintiff by which it appeared that he owed him $1300, for which he was to give a note due in two years, secured by chattel mortgage on all the horses and mules then owned by Sanborn, which was to be ex-

ecuted by himself and wife. He alone executed such mortgage, retaining a duplicate to be executed by himself and wife and then to supersede the one signed by himself alone, after the removal to Greenwood county and an opportunity to ascertain and insert the location of the property to be covered by such duplicate. Upon arriving in Greenwood county Sanborn found that he needed $1600 to complete payment for and obtain possession of the land for which he had contracted. He and his wife thereupon mortgaged to a bank at Eureka the property, which had already been mortgaged by Sanborn to English, to obtain the $1600, which was used in paying the balance of the purchase price of the land. Sanborn then advised English that he was willing to give him a mortgage on the farm, and it was afterwards agreed between them that English should prepare and transmit a new note and mortgage on the farm to be executed by Sanborn and wife and returned to English, but upon the receipt of such papers Sanborn returned them signed by himself, without acknowledgment and without signature of his wife. Afterwards Sanborn stated to English's attorney, to whom the papers had been forwarded, that after his wife got less nervous and after his mother-in-law had left, the papers would be executed and acknowledged by himself and wife and delivered according to the agreement. This was not done.

August 14, 1913, English filed his petition in this action and service of summons was made on the defendants the next day. A deed conveying the Greenwood county land from Sanborn and wife, bearing date of August 12, 1913, its acknowledgment bearing the same date, to O. W. Hall and E. J. Nelson, was filed for record on the 19th day of September, 1913. It is claimed that in exchange for this Greenwood county land owned by Sanborn, Hall was to purchase a tract of land from one Sutton, about fifteen acres, and also a quarter-section, and convey to one Bradley for the land, which Hall was to have Bradley convey to Sanborn's wife. Also that before August 12, 1913, Hall had made the arrangement with Bradley to have his deed left in a bank at Fort Scott; that Hall's deed to Sutton was not acknowledged until August 15, 1913, the day after the petition in this case was filed, and that the deeds to Hall and Bradley were delivered on September 10, 1913.

It is contended by the plaintiff that as between him and the Sanborns his mortgage was a lien upon the Greenwood county land, and it is stated that the trial court in its rulings so held. Also that there was testimony which should have gone to the jury on the question whether Hall and Nelson purchased in good faith. Nelson admitted upon the stand that he had received $300 for making the deal and that he acted as agent for Sanborn; that neither he and Hall nor the Sanborns examined the title to the lands exchanged, although he claimed he was familiar with them already; that he would not say that his name was not put in the deed after its execution, and he admitted that it was afterwards that the instrument was made to state that he and Hall owned equal shares in the land described. Nelson had acted as agent for the vendor when Sanborn purchased the Greenwood county land. He denied having any notice or knowledge of the claims of English.

It is urged that even if Nelson and Hall purchased without notice of the claim of English they did not record their deed until after the pendency of this suit and therefore can not be heard to deny his rights.

The answer of the defendants, Sanborn and wife, was a general denial; that of Nelson and Hall an assertion of the title and denial of notice. The demurrer was sustained as to Nelson and Hall, also as to Sanborn and wife, the court finding that the debt was not yet due, and the action was dismissed as to them without prejudice. While as between English and the Sanborns the former did not literally furnish a part of the purchase price of the Greenwood county land, still by their conduct in using as a basis of credit the property which had already been mortgaged and agreed to be mortgaged to him they deprived him of recourse thereto to secure his debt, and certainly under the pleadings so far as Sanborn is concerned the mortgage signed by him is binding upon him. (*Foster v. Bank,* 71 Kan. 158, 80 Pac. 49; *Charpie v. Stout,* 88 Kan. 318, 128 Pac. 396; *Bisby v. Quinby,* 92 Kan. 86, 140 Pac. 635; *Markham et al. v. Wallace,* 147 Ala. 243, 41 South. 304; *King v. Williams,* 66 Ark. 333, 50 S. W. 695; *Carter v. Holman et al.,* 60 Mo. 498; *Martin v. Nixon,* 92 Mo. 26, 4 S. W. 503; *Dulaney v. Willis,* 95 Va. 606, 29 S. E. 324, 64 Am. St. Rep. 815; 27 Cyc. 976; 1 Jones on Mortgages, §§ 162-166; 8 M. A. L. 300.)

Under all the circumstances shown there are strong equitable reasons why plaintiff's lien should attach also as against Mrs. Sanborn, both she and her husband being content with a general denial of plaintiff's petition and both having enjoyed the fruits of the wrongful change of security. (See *Foster v. Bank*, 71 Kan. 158, 163, 80 Pac. 49.) This being so, the testimony as to the *bona fides* of the purchase by Nelson and Hall should have been submitted to the jury for its consideration under proper instructions, the dates of the various instruments and their delivery and acknowledgment, the shifting of title from Sanborn to his wife, the relation of Nelson to the transactions and the conduct of all the parties being such that fair-minded men might reach different conclusions.

The question of Nelson and Hall being purchasers *pendente lite* as suggested is worthy of very careful consideration when all the evidence shall have been received, but under the present state of the record it is not deemed necessary or proper for determination now.

The judgment is reversed and the cause remanded for further proceedings.