163 So. 616

**BARNES v. BELL et al.**

6 Div. 556.

Supreme Court of Alabama.

Oct. 17, 1935.

Oliver D. Street, of Birmingham, for appellant.

86

Cabaniss & Johnston and Paul Johnston, all of Birmingham, for appellee First Nat. Bank.

KNIGHT, Justice.

The bill in this cause was filed as a general creditors' bill by E. J. Barnes and C. A. Goodwin, partners doing business under the name of C. A. Goodwin & Co., against Clemmie L. Bell, widow of the late Dr. A. W. Bell, and others.

The major purposes of the bill were for the appointment of a receiver, discovery of assets, and to subject certain insurance issued upon the life of Dr. Bell to the payment of complainants' claims against the estate of said decedent, and to the payment of claims of such other creditors of Dr. Bell who were willing to join in the litigation.

The basic equity of the bill was. rested upon the averments substantially charging that Dr. Bell, prior to his death, and while insolvent, had procured a large amount of insurance, in sundry companies, some unknown to complainants, and greatly in excess of the amount authorized by the statute (section 8277 of the Code) and had caused his wife, Clemmie L. Bell, or his wife and his two daughters, to be named therein as beneficiaries. That while in some of the policies his wife and children were not named as beneficiaries, he had subsequently caused the original beneficiary, or beneficiaries, to be changed, so that the same would be payable to his wife, or to his wife and daughters. That being insolvent, and the annual premium paid on said policies being in excess of $1,000, this action was constructively fraudulent as against the creditors of Dr. Bell, as to all insurance in excess of the amount that an annual premium of $1,000 would purchase, on his life, as an ordinary life policy in a standard life insurance company.

It was also a theory of the bill that, inasmuch as the insurance policies were not payable to the estate of Dr. Bell, administrator could not sue thereon. That the policies not being payable to the estate, and not being in possession of the administrator, any effort on the part of the administrator to reach the same would entail numerous suits, possibly first suits in detinue to secure possession of the policies.

It was also averred that the American Traders National Bank, as administrator of the estate of Dr. Bell, had made "no claim against any part of the proceeds of said policies for the benefit of the estate of Dr. Bell, deceased." We find this averment in the bill notwithstanding the fact that it was filed less than a month after Dr. Bell's death, and less than ten days after the actual appointment of the administrator.

It appears that Dr. Bell died on July 6, 1929, as above stated, that the administrator was appointed on July 25, 1929, and the bill was filed on August 3, 1929. We call attention to these facts for the imputation is carried by the bill, and it is also so argued in brief of counsel for appellant, that the administrator had taken no steps, when the bill was filed, to collect any one of the policies, and, to quote language of appellant in brief now before us: "There was no indication that it intended to do so. It had no funds with which to prosecute the complex litigation before it."

It appears, however, that upon its appointment as administrator of said estate, the American Traders National Bank joined in the request of complainants for the appointment of a receiver.

Shortly after the filing of the bill, on petition of the complainants, the administration of the estate of Dr. Bell was removed from the probate court of Jefferson county into the circuit court of said county, in equity, and the American Traders National Bank was duly appointed receiver in said cause.

The American Traders National Bank, as receiver, was ordered and directed by the court to take over and reduce to money the policies of insurance mentioned in the bill, "and/or" in the answer of the respondents filed thereto, and "such other or further policies of insurance as may be thereafter discovered to exist on the life of Dr. Bell, deceased."

The court's order appointing the receiver further provided, in paragraph 5, as follows: "This order is made without prejudice to the rights of any parties at interest to propound their claims to any of said several policies of insurance and/or the proceeds thereof after the said policies have been reduced to money, and for the purpose of protecting the rights of all parties, the said receiver shall keep a separate record of all moneys collected on said insurance policies, and shall file in this court, initialed by a photostatic copy of each insurance policy coming into its hands. All moneys coming into the possession of the said American Traders National Bank, as such receiver, under this order, shall be held by the said receiver subject to the further orders of this court to be made herein."

Mrs. Bell and her daughter, Louise Snow Bell, prosecuted an appeal to this court from the order appointing a receiver in said cause, and this court affirmed the order, holding that the averments of the bill made a case justifying the appointment. Bell et al. v. Goodwin et al., 220 Ala. 537, 126 So. 108, 110. On that appeal, it was observed by Bouldin, Justice, in writing for the court:

"The administrator, as such, could not sue upon these policies. Payable not to the estate of the insured, but to beneficiaries named by him, they are not assets save at the suit of and for the benefit of creditors. Davis v. W. S. Stovall & Bro., 185 Ala. 173, 64 So. 586; McClarin v. Anderson, 109 Ala. 571, 19 So. 982; Davis v. Swanson, 54 Ala. 277, 25 Am. Rep. 678.

"The multiplicity of suits, the probable interpleaders, the delay, expense, and doubtful results of actions to collect these policies without this bill, we regard as emphasizing the equity of the bill.

"The bill having been filed advisedly, it seems but the obvious thing to impound the fund, provide a receiver to collect, to give acquittances, and to conserve it for distribution among those entitled as per final decree of the court. 23 R. C. L. pp. 20, 27 and 31; 34 Cyc. pp. 58, 59; 20 Cyc. p. 831."

With the propriety of the appointment of a receiver established in this court, on return of the cause to the circuit court, the complainants amended their bill in a number of particulars, bringing in new parties, among them the First National Bank

of Birmingham, the Woodlawn Savings Bank, and the Woodlawn Building & Loan Association.

Thereafter numerous pleadings were filed in the cause, but we deem it wholly unnecessary to a decision of the questions presented by this appeal to refer to the same in detail.

The American Traders National Bank, in its dual capacity as receiver and as administrator of the estate of Dr. Bell, actively entered upon the discharge of its separate duties, immediately upon its appointments, and continued to so act down to the 1st day of July, 1930, when the said bank consolidated with the First National Bank of Birmingham, and upon the merger of the two banks, the First National Bank of Birmingham was appointed receiver and administrator of the estate of Dr. Bell "in lieu and stead of said American Traders National Bank."

On June 18, 1931, the cause came on for hearing, and the decree then rendered recites:

"On this the 18th day of June, 1931, came the parties to this cause by their solicitors, and upon their motion, it is ordered by the court that this cause be, and it is hereby submitted for a decree upon the pleadings and proof as noted by the register.

"Final Decree.

"This cause coming on to be heard, was submitted for final decree on the pleadings and proof as noted by the register, and, it appearing to the court that all parties at interest are present in open court either in person or by their respective solicitors of record, and it further appearing that the minor respondents, Clemmie Weaver Bell and Margaret Dudley Bell, are each represented by William Burr, Esquire, as their respective guardian ad litem, he having been duly appointed and qualified in this cause, and having heretofore duly filed an answer in writing on behalf of each of said minors, denying all of the allegations of the bill of complaint as last amended, the several cross-bills, and the several claims of the several interveners, separately and severally, and it appearing that there is a fund to be administered and disposed of, to wit, a fund aggregating approximately $163,000.00, in the hands of the First National Bank of Birmingham, as receiver of the estate of A. W. Bell, deceased, derived as hereinafter shown, and it appearing to the court that under the allegations and proof in this cause the fund in the hands of the receiver is subject to the liens and claims hereinafter decreed and should now be disbursed by proper decree; that the administration of the estate of A. W. Bell, deceased, and the funds in the hands of the administrator should be reserved for further and other orders of the court save and except as otherwise ordered herein; that the parties complainant, the respondents, the interveners, the cross-respondents and the cross-complainants herein named are entitled to relief to the extent hereinafter awarded; it is here and now by the court:

"Considered, ordered, adjudged and decreed as follows:

"1. That C. A. Goodwin and E. J. Barnes, partners doing business under the firm name of C. A. Goodwin & Company, filed the original bill of complaint in this cause, and that the following parties only have intervened, made themselves parties to the cause, proved their claims, and are entitled to share in the disbursement of the funds in the hands of the First National Bank of Birmingham, as receiver of the estate of A. W. Bell, to wit:

"C. A. Goodwin and E. J. Barnes, partners doing business under the firm name of C. A. Goodwin & Company.

"Woodlawn Building & Loan Association, a corporation.

"First National Bank of Birmingham, Alabama, a corporation.

"First National Bank of Birmingham, Alabama, a corporation, as successor in interest to the American Traders National Bank of Birmingham.

"Clemmie L. Bell.

"Louise Snow Bell.

"Clemmie Weaver Bell, a minor.

"Margaret Dudley Bell, a minor.

"H. H. Montgomery, as superintendent of banks of the state of Alabama liquidating the Woodlawn Savings Bank, a corporation; and that all other claims to the funds in the hands of the First National Bank of Birmingham, as receiver of the estate of A. W. Bell, deceased, be, and they are hereby, separately and severally, rejected and disallowed."

By this decree, it was adjudged and decreed that the "said insurance policies, the subject-matter of this suit, were procured, or the premiums thereon paid by Dr. A. W. Bell while he was insolvent,

and that the securing of said policies, or the payment of the premiums thereon, or the changing of the beneficiaries therein, making the same payable to his widow, and to her and minor children, as alleged in the bill of complaint as last amended, were voluntary conveyances as against the complainant and interveners in this cause subject to be set aside at the instance of such creditors; that the said several conveyances be and the same are hereby set aside and the said policies adjudged to be subject to the payment of the claims of the complainant, cross-complainants, and the parties who have intervened in this cause and proved, and had their claims allowed as herein shown."

The receiver was then directed to pay: To Clemmie L. Bell, widow of Dr. Bell, $8,500, and $8,500 to each of the children of Dr. Bell, viz., Louise Snow Bell, Clemmie Weaver Bell, and Margaret Bell, to be received by them in full of all claims or demands which said parties had "against the First National Bank of Birmingham, as receiver of the estate of A. W. Bell, and against the proceeds of the policies of insurance described in the bill of complaint and the respective cross-bills, the subject-matter of this litigation."

By the fourth paragraph of the decree the First National Bank, as administrator of the estate of Dr. Bell, was directed to pay "out of the funds in its hands as such administrator, to Clemmie L. Bell, the widow, $333.33, and a like sum to each of the two minor children of said decedent, representing exemptions of personal property due said widow and minor children from said estate."

By the eighth clause of the decree the said First National Bank of Birmingham, as such receiver, was directed to pay out of funds in its hands as such receiver, the cost of the receivership proceedings accrued to that date.

By the ninth clause of the decree, the receiver was directed to pay to itself, as full compensation for its services to that date, the sum of $2,500.

By the tenth clause of the decree, the said receiver was ordered to distribute pro rata the remainder of the funds in its hands as such receiver, "among the complainants and the following interveners whose several claims are hereby fixed and allowed as common, unsecured creditors against the funds in the hands of the receiver and administrator, in the follow-

ing several amounts: C. A. Goodwin & Co., $25,525; Woodlawn Building & Loan Association, a corporation, $107,600; First National Bank of Birmingham, including its claim as successor in interest of the American Traders National Bank, $75,-539."

Paragraphs 11, 12, and 13 of this decree appear in the report of this case.

In setting forth the above items of disbursement, we have omitted some items which we deem it unnecessary for the purposes of this case to set out in detail.

We note that the report of the receiver, showing the amount on hand at the time the above decree was filed, is omitted from the record. We take it this is due to an oversight.

No exceptions appear to have been filed to the report of the register, if any was made, and there is nothing in the record to show any error on the part of the court in ascertaining that the amount on hand was $163,000. The decree recites that the evidence in the cause was heard orally in open court.

On June 25, 1931, the said First National Bank of Birmingham, "in its capacity as receiver of the estate of A. W. Bell, deceased," filed its petition in the court showing that since June 18, 1929, the date of the last decree, it had, pursuant to the terms of the decree of June 18, 1931, "paid out the funds in its hands as such receiver to the several persons, firms and corporations and in the several amounts provided in and by said decree."

In this petition, the said receiver stated that subsequent to the 18th day of June, 1931; it had in its capacity as receiver collected from the American Life Insurance Company the sum of $1,800, and which it had distributed "by consent of all the parties hereto" to the following parties, and in the following amounts: Nora Thomas, register, $13.50; C. A. Goodwin & Co., $218.49; Woodlawn Building & Loan Association, $921.30; First National Bank of Birmingham, $646.71.

The receiver in said petition averred that it had now accounted for all funds coming into its hands or to which it is entitled as such receiver, "and that its duties as such receiver are no longer required and that it and the sureties on its official bond as such receiver should now be discharged."

On June 25, 1931, the parties to this suit came into court by their solicitors, "and upon their motion," the cause was submitted for decree on the above-mentioned petition.

The court thereupon entered a decree ratifying and confirming the distribution of the said $1,800, and discharged the receiver and the sureties on his "official bond," and formally declared the receivership proceedings closed.

It is now earnestly insisted by appellant that C. A. Goodwin & Co. by filing the bill in this cause thereby acquired a lien upon the property brought into the custody of the court and subjected to the payment of the creditors of said estate, which should be paid and discharged in full before any other creditors, except such creditors as might come in and join in the prosecution of the litigation, agreeing to pay their proportion of the costs and expenses of the suit. Appellant insists that the only creditor who "accepted their invitation and agreed to aid in the suit and to pay its fair share of such costs and expenses was the Woodlawn Building & Loan Association." The court found otherwise, holding that the Woodlawn Building & Loan Association, First National Bank of Birmingham, First National Bank of Birmingham, as successor in interest to the American Traders National Bank, Clemmie L. Bell, Louise Snow Bell, Clemmie Weaver Bell, Margaret Dudley Bell, and H. H. Montgomery, superintendent of banks, liquidating the Woodlawn Savings Bank, had made themselves parties to the cause, had proved their claims, and were entitled to share in the disbursement of the funds in the hands of the receiver.

Whether the court was in error in so finding, we do not think we are called upon to determine, in the state of the record, as it appears before us—manifestly, in many particulars, incomplete.

■ It is unquestionably true that a creditor without a lien may file a bill to discover, or to subject to the payment of his debt, any property which has been fraudulently conveyed or transferred, or attempted to be fraudulently conveyed or transferred, and when a bill is so filed, and process of summons is served on the defendant, a lien is acquired on the property conveyed. Evans v. Welch, 63 Ala. 250; Mathews v. Mobile Mutual Ins. Co., 75 Ala. 85; Hines v. Duncan, 79 Ala. 112,

116, 58 Am. Rep. 580; Carothers v. Weaver et al., 220 Ala. 584, 127 So. 151; North Birmingham American Bank et al. v. Realty Mortgage Co., 223 Ala. 30, 134 So. 796; Cortner v. Galyon, 223 Ala. 405, 137 So. 30.

■ When the creditor, filing such a bill, files it on behalf of himself and all others who may wish to join therein, all who do timely come in, under the invitation, are allowed to share the lien with the original complainant on the property subjected to payment of their debts.

Of course, the complainant could have filed the bill for his own exclusive benefit, but he elected instead to make his bill a general creditors' bill. Merchants' Bank of Mobile v. Parrish et ux., 214 Ala. 96, 106 So. 504.

■ Was the decree of June 18, 1931, settling the equities of the case, the ascertainment by the court of the amount of money collected by the receiver, and on hand for distribution, the ascertainment of the parties entitled to distribution therein, the ascertainment of the amount due the complainant, and of the other named parties and the order of distribution made, and the subsequent disbursement by the receiver as per the decree, a final decree, in such sense as it would have supported an appeal therefrom? We think it was. Hastie v. Aiken et al., 67 Ala. 313; Rome & Decatur Railroad Co. v. W. J. Sibert, 97 Ala. 393, 12 So. 69; Lehman-Durr & Co. v. Robertson, 84 Ala. 489, 4 So. 728; Foley et al. v. Leva et al., 101 Ala. 395, 13 So. 747; Louisville Mfg. Co. v. Brown, 101 Ala. 273, 13 So. 15; Wynn, Adm'r v. Tallapoosa County Bank, 168 Ala. 469, 53 So. 228; McClurkin v. McClurkin, 206 Ala. 513, 90 So. 917.

■ The decree of June 18, 1931, determining parties entitled to participate in the receivership funds, and the amount of each claim, and directing the receiver to make distribution accordingly, being a final decree, any party in interest and whose rights were affected thereby could have prosecuted an appeal therefrom, and not having done so within six months after the rendition of said decree, this court, on this appeal taken nearly three years after the decree of June 18, 1931, is powerless to review and revise that decree.

The distribution made on June 18, 1931, must therefore stand. However, we do

not wish to be understood as intimating that we have any doubt as to the correctness of that decree.

It would also seem that the appellant was satisfied with the findings and holding of the court on its decree of June 18, 1931, as we find from the record that the complainants consented that $1,800 collected subsequently by the receiver should be distributed between complainants the Woodlawn Building & Loan Association and the First National Bank of Birmingham. All other parties to whom distribution was made on June 18, 1931, had been paid in full. This conduct on the part of complainants was a clear recognition of the fact that the said Woodlawn Building & Loan Association and the First National Bank of Birmingham had properly intervened in the cause.

The foregoing serves to demonstrate that the complainants must be held to have received their proper pro rata share in the distribution of the $163,000, distributed under the decree of June 18, 1931.

It is insisted by the appellant that the lower court declined at the time it rendered the decree of June 18, 1931, "to rule on claim of appellant to a priority of payment, but made a tentative distribution and reserved for future decision the question of priority."

With reference to the distribution ordered by the decree of June 18, 1931, of the funds in the hands of the receiver, $163,000, the distribution was in no wise tentative, or qualified.

However, as to the funds in the hands of the administrator derived from policies of insurance payable to the administrator, the decree recites: "The complainant C. A. Goodwin & Co., and the Woodlawn Building & Loan Association, intervener, claim that by the filing and prosecution of this suit they have acquired a lien upon the policies of insurance that were payable to the administrator of the estate of A. W. Bell, deceased, and that their lien has priority over the claim of any other creditor of the estate of A. W. Bell as to the fund on hand realized from said policies amounting now to approximately $30,000 in the hands of the administrator as such, as well as any additional amounts now in litigation and/or (language of the court) process of collection, as referred to in the original bill of complaint as last amended heretofore filed herein; complainants deny the right of any person to share in said fund except the complainant, the Woodlawn Building & Loan Association, and the First National Bank of Birmingham is expressly declared that nothing in this decree shall be construed as in any manner prejudicing said claims and contentions of complainant, but the same are hereby expressly reserved for the further consideration and determination by the court."

It will thus be seen that the question reserved for the future consideration of the court related wholly to the funds in the hands of the administrator, derived from policies of insurance payable to the administrator, and other possible amounts then in litigation.

Were the complainants, as insisted by them, entitled to a lien upon the policies of insurance issued upon the life of Dr. Bell, and payable to his estate, and which so continued down to his death, and which were collected by the administrator, and held by it as such administrator? We say collected by him as such administrator for the reason that the receiver made no claim to having collected these policies, and never reported them as collected by him. No exceptions were filed by the complainant when these policies, or rather the proceeds, were omitted from settlement of the receiver's accounts. It appears that at the time the court made the order of distribution on the receiver's report, on June 18, 1931, the administrator held this fund in his hands as having been derived from said policies, and no exceptions or objections were then interposed.

We also find that the administrator filed its report in the cause on June 4, 1931, reporting the collection by him of three policies of insurance on the life of Dr. Bell, amounting to $30,000.

Not only this, but we find that the court, on June 26, 1931, entered a decree on the report of the administrator allowing counsel fees to the administrator of $1,500 to the law firm of Cavaniss & Johnston, and $4,500 to Messrs. O. D. Street, A. Leo Oberdorfer, and W. S. Pritchard, for services rendered the administrator. If these services were not rendered in and about the collection of the policies which were payable to and collected by the administrator, we confess inability on our part to see for what other services these fees could have been paid.

The insistence of complainants that the three policies of insurance which were payable to the estate of Dr. Bell, and which were taken over by the administrator, and by it collected, must be regarded as having been drawn into the receivership proceedings, and were assets in the receiver's hands for collection, and that complainants, by filing their bill and prosecuting said cause to a successful conclusion, acquired a lien upon said policies, or the proceeds derived therefrom, entitling them to priority of payment, cannot be sustained.

These assets in the hands of the administrator must be treated, dealt with, and distributed just as if there had been no general creditors' bill, and no receiver.

▋ The court, in its decree of June 18, 1931, in decreeing distribution under the creditors' bill very properly excluded from participation in said funds all creditors who did not intervene and prove their claims. But that decree did not, and could not, preclude such creditors from sharing in the distribution of the funds in the hands of the administrator, provided their claims had been duly presented as claims against the estate, within the time allowed by law.

▋ It was also insisted that complainants should have been allowed to participate in the distribution of the funds in the hands of the administrator on the basis of the full amount of their original claim, without abatement or diminution on account of the amount paid on such claim on distribution of the receivership fund.

This insistence is so unjust and inequitable that to argue the question would tend to give it some degree of plausibility, which it does not possess.

The lower court properly held that in participating in the distribution of the funds in the hands of the administrator, the amount paid by the receiver to the complainants, and other named interveners, should be taken into account, and their claims abated by the amount so paid them.

On final settlement of the estate by the administrator, the complainants objected to the allowance of any claim where the claimant failed to intervene in the general creditors' bill. There was no merit in the objection.

The complainants also objected to the allowance of a number of claims against the estate upon the ground that the same were not supported by proper affidavits, and were not filed within twelve months after the grant of letters of administration, as provided by sections 5815 and 5818 of the Code.

We find in the record stipulation between attorneys for appellant and appellee, agreeing that the claims on behalf of the First National Bank of Birmingham, the American Traders National Bank, C. A. Goodwin & Co., and Woodlawn Building & Loan Association "were properly filed within the time required by law, and the amount found by the court to be due from A. W. Bell, deceased, to each of said creditors was correct."

We also find stipulation between said attorneys agreeing "there was evidence before the court tending to establish the correctness of the amounts found by the court to be due by A. W. Bell to each of the other creditors." Under this agreement, we are only to determine whether said creditors referred to in the second stipulation duly and properly presented their claims against said estate, in compliance with sections 5815 and 5818 of the Code.

The complainants, by way of written objections, set up and insisted upon the statute of nonclaim against the allowance of all of said claims except the claims of the four named parties mentioned above.

▋ The burden of proof was upon the creditor, in each instance, to show due presentation to avert the bar of the statute of nonclaim. W. L. Weller & Sons v. Rensford, 185 Ala. 333, 64 So. 366; McKenzie v. Matthews et al., 153 Ala. 437, 44 So. 958; Brannan v. Sherry, 195 Ala. 272, 71 So. 106.

▋ There is no authority, statutory or otherwise, for the effectuation of a valid presentation, to avert the bar of the statute, of a claim against a decedent's estate by simply filing it, however complete the statement, in the chancery court. W. L. Weller & Sons v. Rensford, supra; Smith et al. v. Nixon et al., 205 Ala. 223, 87 So. 326.

Section 5815 of the Code requires that all claims against the estate of a decedent, other than certain claims specified in section 5814, must be presented within twelve months after the same have accrued, or within twelve months after grant of letters testamentary or of administra-

tion; *and if not presented within* that time, they are forever barred, and the payment or allowance thereof *is prohibited.* In this respect no discretion is left to the administrator, nor vested in the court.

Section 5818, Code, provides how the presentation must be made. This section requires that every claim presented against a decedent's estate by filing the same in the office of the judge of probate must be verified by the oath of the claimant or some other person having knowledge of the correctness of the claim, and that the amount claimed is justly due or to become due, after allowing all proper credits. But when presentation of the claim is made to the administrator, there is no requirement of verification. Rosser v. Sanders et al., 219 Ala. 327, 122 So. 340. (By the Act of 1931, General Acts 1931, p. 837, all claims must now be presented by filing the same in the office of the judge of probate in which letters are granted, and same must be docketed with a note of the date of presentation.)

Section 6013 of the Code, inter alia, provides that when, prior to the declaration of insolvency, a claim has been filed in the office of the judge of probate, as required by section 5818, or has been duly presented to the administrator or executor, such claim shall be considered as duly filed under this section (6013).

It will appear from the record that at the time Dr. Bell's estate was declared insolvent all the claims allowed by the court had been presented, either by filing the same in the office of the judge of probate of Jefferson county, verified in substantial compliance with section 5818, or by presenting the same to the administrator, and within twelve months after the issuance of letters of administration. Those presented to the administrator were not required, as above pointed out, to be verified.

It is our opinion and conclusion that the court committed no error in decreeing that each of the claims allowed by him was duly and properly presented, and that the named claimants were entitled to participate ratably in the distribution of the funds in the hands of the administrator.

There is no merit whatever in appellant's contention that the creditors who refused, or ineffectually attempted to intervene in the receivership case, were thereby precluded from sharing in the funds in the hands of the administrator. Complainants' plea of res adjudicata was without merit, and therefore it was properly so held by the court.

Complainants' contention that they should have been allowed an additional fee of $750 to compensate their attorneys in the matter of resisting the cross-bill filed by the West End Savings Bank was denied by the trial court. The testimony on this issue was given orally before the court. We see no good or sound reason for disturbing the decree of the circuit court in this particular. It will stand. However, we may add that the chancellor was exceedingly generous and liberal with counsel in the matter of fees. They have no just ground of complaint.

It follows that the decree appealed from is due to be and is affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.