168 So. 675

**BISHOP et al. v. McPHERSON.**

**6 Div. 865.**

Supreme Court of Alabama.

May 21, 1936.

Rehearing Denied June 18, 1936.

Smith, Windham, Jackson & Rives, of Birmingham, for appellants.

596

John W. Altman and Thos. H. Fox, both of Birmingham, for appellee.

KNIGHT, Justice.

The bill in this cause was filed by appellee, P. L. McPherson, to have a certain instrument executed by the respondents Ruby G. Bishop and her husband, C. M. Bishop, to the complainant, declared and enforced as an equitable mortgage on the lands described in the bill; or, in the alternative, to have a decree of the court subrogating the complainant to the lien of the "original vendor" of said property for the amount advanced by the complainant for the purchase of said property; and to have a certain purported mortgage executed by the said respondents Ruby G. Bishop and her said husband to the respondent H. M. Cowart declared to be fraudulent and void as against the rights of the complainant; for sale of said property for the satisfaction of said mortgage or lien; and for general relief.

It appears from the averments of the bill as last amended that a short time prior to July 23, 1932, the respondent C. M. Bishop "requested the complainant to lend him the sum of $2,000.00, stating that he and his wife were about to, or desired, to purchase" certain real estate in Jefferson county (and which is particularly described in the bill), "with the money, if such loan were made, and that if the complainant would make said loan to said respondent, they, the said C. M. Bishop and wife, Ruby G. Bishop, would execute a mortgage on said land which they desired to buy, to the complainant, to secure said sum of money, and that relying on these representations, the complainant did in fact make a loan of money to the respondent C. M. Bishop, in the amount of $2,000.00."

It is further averred: That with the money thus borrowed of complainant the respondents did actually purchase said property, which was then unimproved, for the sum of $600. That the title to said property was taken in the name of the respondent Ruby G. Bishop.

That, after the purchase of the property, the respondents "went ahead and had a house built on said land," and in paying for the construction of said house, and in paying for the material used in the construction, the respondents expended the balance of said loan, that is to say, $1,400.

That on or about July 23, 1932, the respondents Bishop executed to the complainant a paper writing purporting to be a mortgage on said property to secure the loan made by the complainant to the said C. M. Bishop. This instrument appears in the report of the case.

In paragraph E of the bill as amended it is averred that it was the intention of the parties at the time the loan was made that the same should be secured by a mortgage; that it was the intention of the parties, including the respondents C. M. Bishop and Ruby G. Bishop, that said purported mortgage "was to be and operate as

a good and valid mortgage on said property."

It fully appears that the only money used in the purchase of said property and in the construction of the residence thereon was money actually advanced by the complainant.

It also appears from the averments of the bill that the respondents C. M. Bishop and wife resided upon the property as their home at the time the mortgage was executed.

The court overruled the demurrers of the respondents to the bill as amended. From this decree the respondents appeal.

It unquestionably appears from the bill that it was not the wife's money that was used in the purchase of the real estate, nor was it her money which was used in the construction of the residence thereon. It was the husband's money, obtained by him from the complainant for the express purpose of purchasing the property, and upon the assurance that a mortgage would be executed on the property to be bought and delivered to the complainant as security for the loan.

It appears, as above pointed out, that the conveyance was made to the wife, Ruby G. Bishop.

Confessedly, had the purchase money not been paid to the vendor, the fact that the conveyance, at the request of the husband, was made to the wife, would create no obstacle to the enforcement of the vendor's lien upon the property.

Under such circumstances, the wife would be a mere volunteer—the volunteer donee of the husband—standing in his shoes, "entitled only to his rights, and bound by every equity affecting him." Pylant v. Reeves, 53 Ala. 132, 25 Am.Rep. 605; Crampton v. Prince, 83 Ala. 246, 3 So. 519, 3 Am.St.Rep. 718; Moore v. Worthy, 56 Ala. 163; Daniel v. Daniel, 214 Ala. 406, 108 So. 42.

■ When the complainant made the loan to the respondent C. M. Bishop, he (the complainant) became by that act a creditor of the said C. M. Bishop, a simple contract creditor it is true, but none the less a creditor. As such simple contract creditor he acquired certain rights as against the debtor and his property which the debtor could not defeat by the voluntary conveyance of his property to his wife or to any one else. Among such rights was the right to pursue the debtor's property and have it applied, or subjected, to the payment of the debt. Such a voluntary conveyance is constructively fraudulent against the creditors of the debtor, and will be set aside by a court of equity. And this would result without regard to the good or bad faith of the voluntary donee, and whether or not such donee knew, or did not know, of the purpose or intent of the grantor. A court of equity requires that one must be just, before being generous, in the disposition of his property. Wood v. Potts & Potts, 140 Ala. 425, 37 So. 253; Beall v. Lehman Durr Co., 110 Ala. 446, 450, 18 So. 230; Wallen v. Montague, 121 Ala. 287, 25 So. 773; Carr v. Goldstein, 210 Ala. 366, 98 So. 199; Gant v. Dunn, 215 Ala. 411, 110 So. 903.

■ The filing of the bill by a simple contract creditor in such a case will have the effect of fastening an equitable lien upon the property so conveyed to a voluntary donee. Barnes v. Bell, 231 Ala. 84, 163 So. 616; Cortner v. Galyon, 223 Ala. 405, 137 So. 30; North Birmingham American Bank et al. v. Realty Mortgage Co., 223 Ala. 30, 134 So. 796; Corothers v. Weaver et al., 220 Ala. 584, 127 So. 151; Hines v. Duncan, 79 Ala. 112, 58 Am. Rep. 580; Evans v. Welch, 63 Ala. 250; Mathews v. Mobile Mutual Ins. Co., 75 Ala. 85.

Confessedly, having advanced the respondent C. M. Bishop $2,000 with which to purchase the property and to make the improvements thereon, to say the least of it, the complainant became a creditor of the said C. M. Bishop, and, being such creditor, the said Bishop could not make a gift of the property, so bought with the money borrowed of complainant, to his wife, without committing a constructive fraud against the complainant. In these circumstances, the complainant had the clearest right to pursue this property and to fasten a lien thereon for the payment of the entire amount due him, not simply the $600, the amount paid for the naked land, but for the entire debt.

■ Against the assertion and enforcement of said above-stated equitable right of the complainant, neither the coverture nor homestead rights of Mrs. Bishop would constitute any barrier or obstacle. Being a mere voluntary grantee or donee of the

husband, whatever rights she acquired from the conveyance would be subordinate to the superior rights of the complainant.

Her disabilities as a married woman may prevent her from becoming the surety of her husband, and her rights as a wife may protect the homestead from being taken without her voluntary assent, evidenced in the statutory mode, but neither her disabilities nor her homestead rights can be extended to authorize her to take and hold the property of another without paying for the same. Pylant v. Reeves, supra.

It is to be observed here that no personal decree is sought against Mrs. Bishop. As far as she is concerned, the entire proceedings are against the property.

Parties may, of course, voluntarily do that which a court of equity would, in a proper proceedings, require them to do. This upon the well-recognized maxim that "equity treats that as done which ought to be done."

Recognizing, we take it, the equitable rights of the complainant above pointed out, the respondents C. M. Bishop and Ruby G. Bishop executed and delivered to the complainant an instrument, which was intended by them as a mortgage on the property bought with money loaned to said C. M. Bishop, and which it was agreed at the time should be executed to complainant as security for the loan. This instrument is neither witnessed nor acknowledged, and does not meet the requirements of a legal mortgage. The question, therefore, now is, Will a court of equity enforce this instrument as an equitable mortgage? Confessedly, it was intended by the parties as security for the indebtedness contracted with the complainant.

"Courts of equity are not governed by the same principles as courts of law in determining whether a mortgage has been created, and, generally whenever a transaction resolves itself into a security, or an offer or attempt to pledge land as security for a debt or liability, equity will treat it as a mortgage, without regard to the form it may assume. Although the conveyance in question may lack the formal requisites of a mortgage, or be expressed in inapt or untechnical language, equity will look to substance and give effect to the intention of the parties." 41 Corpus Juris, § 33, p. 293.

This statement of the text, taken from Corpus Juris, finds abundant support in our own adjudications. Kyle v. Bellenger, 79 Ala. 516; Newlin v. McAfee, 64 Ala. 357; Jones v. Anderson, 76 Ala. 427; Wood et al. v. Holly Mfg. Co., 100 Ala. 326, 13 So. 948; Markham v. Wallace, 147 Ala. 243, 41 So. 304; Cross et al. v. Bank of Ensley, 203 Ala. 561, 84 So. 267; Edwards v. Scruggs, 155 Ala. 568, 46 So. 850.

In fact, it may be broadly stated that an equitable mortgage may be constituted by any writing from which the intention to do so may be gathered. 41 Corpus Juris, § 34, p. 294; Edwards v. Scruggs, supra; Courtner v. Etheredge, 149 Ala. 78, 43 So. 368. Nor is it essential that the instrument relied upon to show an equitable mortgage was either acknowledged or attested. Markham v. Wallace, supra.

We have no doubt that the instrument executed and delivered by the respondents Ruby G. and C. M. Bishop constitutes an equitable mortgage upon the property. It was so intended by them as well as by the complainant. We are therefore justified in so treating it.

By the execution of this equitable mortgage, the said parties accomplished in fact and in equity a result that the court would have reached, for, manifestly, under the facts averred, the complainant would have been decreed an equitable lien on the property both as against the said C. M. Bishop, as well as against the wife, the voluntary donee.

There was no merit in any of the grounds of demurrer assigned by the respondents Bishop.

Manifestly, there was no error in overruling the demurrer to the bill as last amended of the respondent H. M. Cowart. Wood v. Potts & Potts, supra; Gant v. Dunn, supra; Markham v. Wallace, supra.

It follows that the decree appealed from is due to be affirmed, and it is accordingly so ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.