# Courtner *v.* Etheredge, *et al.*

### Bill to Foreclose Mortgage.

(Decided March 2, 1907.   43 So. Rep. 368.)

1. *Limitation of Action; Part Payment.*—The payment of interest on a note secured by a mortgage relieved both note and mortgage from the operation of the statute of limitations.

2. *Mortgages; Equitable Mortgage; Intention of Parties.*—Although a conveyance may fail as a mortgage in conveying the legal title, where it is shown that it was the intent of the parties

[Courtner v. Etheredge, et al.]

to the instrument that it should operate as a lien on certain land to secure the payment of borrowed money a court of equity will give such instrument effect as an eqiutable mortgage.

3. *Tenancy in Common; Adverse Possession; Hostile Character.*— Where four persons own land as tenants in common, and two of them agree among themselves upon a division of the land between themselves, no change of title is effected, and the continued possession of one part of the land by one of the parties to the division, without actual ouster of his co-tenants, does not constitute an adverse holding as to them.

4. *Same; Judicial Sale; Notice of Change of Ownership.*—The undivided interest of one of the tenants in common was sold under execution at a sheriff's sale. The share was purchased by a co-tenant, who conveyed it to the wife of the execution co-tenant. The conveyance to the wife was not recorded and she and her husband continued to occupy the land just as before the sale of the husband's interest, and its conveyance to her. Held, there was not such notice of change of ownership or possession as to entitle the wife to claim any right by adverse possession.

5. *Schools and School Districts.—School Funds; Investment; Retroactive Statutes; Curative Acts.*—If no contract or vested rights are violated or impaired the ulttra vires act of the school commissioner in making a loan on real estate is remedied by an act of the legislature ratifying the same, where the legislature has power in the first instance to authorize school commissioners to make a loan on real estate.

6. *Constitutional Law; Impairing Obligation of Contracts.*—The Act of March 2, 1901, (Acts 1900-01, p. 2070) affords a remedy for the enforcement of the contract instead of destroying or impairing the remedy, and hence is not violative of article 4, section 56, Constitution 1875.

7. *Statutes; Amendments; Constitutional Requirements.*—Article 4, Sec. 2, Constitution 1875, applies only to amendments, which without the presence of the original act, are unintelligible, and hence, the act of March 2, 1901 (1900-01, 2070) is not repugnant to or violative of the Constitution, either as to its amendment or that it shall contain but one subject which shall be clearly expressed in the title.

8. *Schools and School Districts; Offices; Ultra Vires Contract; Curative Act.*—Sections 3 and 4 of the Act of March 2, 1901 (Acts 1900-01, p. 2070) ratify the ultra vires act of the commissioner in making the loan in this instance, and empowers their successors, the trustees, to enforce the loan contract.

APPEAL from Lawrence Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by B. T. Etheredge and others against Robert G. Courtner, administrator. From a decree for plaintiffs, defendant appeals.

KIRK, CARMICHAEL & RATHER, and C. S. SHERROD, for appellant.—The trustees have no right to maintain the bill in their own name.—*Lamb v. Pioneer S. & L. Co.*, 106 Ala. 591. Signing the name of an attesting witness to a note or bond by the agent of the obligee or payee is a material alteration and discharges the obligor.— *White Sewing Machine v. Saxon*, 121 Ala. 399; *Anderson v. Bell*, 87 Ala. 334; *Montgomery v. Crosswaithe*, 90 Ala. 553; *Ex parte Sayre*, 95 Ala. 288; *Sharpe v. Orme*, 61 Ala. 263. The adding of an acknowledgement to a mortgage without the knowledge and consent of the mortgagor is a material alteration of the instrument.— *Alabama State Land Company v. Thompson*, 104 Ala. 573; 121 Ala. 399; 87 Ala. 334; 95 Ala. 288. A conveyance of land held adversely to the grantor is void as to such adverse holder or those claiming under him.— *Murray v. Hoyle*, 92 Ala. 559. The validity of acknowledgements can be impeached by showing that the officer who took it had no jurisdiction of the parties.—*Mortgage Co. v. Payne*, 107 Ala. 578. A clerk appointed by a probate judge has no authority to take any acknowledgements.—*Pioneer S. & L. Co. v. Barclay*, 108 Ala. 155. The acknowledgement was a nullity.—*Griffith v. Ventress*, 91 Ala. 366; *Grider v. A. L. F. M. Co.*, 99 Ala. 281. The acknowledgement cannot operate as an attestation.—*Holleman v. Denyes*, 51 Ala. 95. The mortgage was barred by the statute of limitations of twenty years.—*McArthur's Case*, 32 Ala. 35; *Lee v. Thompson*, 99 Ala. 95; *Coyle v. Wilkins*, 57 Ala. 108. The contract is malum in se and will not be enforced.—*Whetstone v. Bank of Montgomery*, 9 Ala. 282; *Brooklyn L. & I. Co. v. Bledsoe*, 52 Ala. 551. The mortgage is void because executed while another was in adverse possession.— *Pearson v. King*, 99 Ala. 125. The acts of 1900-01, are violative of section 2 of article 4 of Constitution of 1875. —*Harper v. The State*, 109 Ala. 28; *Rice v. Westcott*,

108 Ala. 353; *Miller v. Perry*, 101 Ala. 531; 70 Ala. 145.
The contract being void the statute cannot give it validity.—Cooley's Const. Lim. p. 465 and note to p. 469.

W. P. and W. L. CHITWOOD, for appellee.—The part
payments on the note and mortgage recognized its validity and took it without the statute of limitation.—
*Cameron v. Cameron*, 25 Ala. 344; Sec. 2811, Code 1896;
13 A. & E. Ency. of Law, 756. The mortgage was good
in equity and enforceable.—*Newton, Findlay & Co. v.
McAfee*, 64 Ala. 357; *Smith v. Hiles, et al.*, 107 Ala. 273.
Galey was a de facto officer when he took the acknowl-
edgement.—4 Mayf. Dig. 341. The trustees had a right
to bring this suit under the act of March 2, 1901.—Acts
1900-01, p. 2070. This act is constitutional.—§ 56, arti-
cle 4, Const. 1875; *Edwards v. Williamson*, 70 Ala. 145;
*Osborn v. Johnson, et al.*, 99 Ala. 309. The act does not
contravene section 2 of article 4 of the Constitution.—
*State ex rel., etc. v. Rogers*, 107 Ala. 444; *Birmingham
Union Ry Co. v. Elyton Land Co.*, 114 Ala. 70; *City of
Montgomery v. National B. & L. Asso.*, 108 Al.a 336;
*Burton v. The State*, 107 Ala. 108; *Railroad Co. v. Pike
County*, 97 Ala. 105; *State ex rel., etc. v. McCary, et al.*,
128 Ala. 135. There was no element of adverse posses-
sion on the part of Carrie Ashford.—*Stiff v. Cobb* ,126
Ala. 381; *Ashford v. Ashford*, 34 South. 10. In the ab-
sence of proof to the contrary it will be presumed that
the commissioners or trustees had authority to make the
loan.—*Alabama G. L. Ins. Co. v. Central A. & M. Asso.*,
54 Ala. 73. The doctrine is not applicable to an exe-
cuted contract.—2 Mayf. Dig. p. 769; 27 A. & E. Ency.
of Law, 263. In any event the contract is ratified.—
*Ala. Nat. Bank v. O'Neal*, 128 Ala. 192. The act of 1901
vested the power in trustees to collect debts heretofore
contracted.—*Lovejoy v. Beason*, 121 Ala. 608; *State ex
rel. Sanche v. Webb*, 110 Ala. 214; *Ex parte Buckely*, 54
Ala. 55. When the words of the statute or the clear leg-
islative intent is that the act shall be retroactive it will
be so held.—*Smith v. Kolb*, 58 Ala. 645; *Eskridge v.
Detman*, 51 Ala. 250.

6

DOWDELL, J.—The present bill is one against the heirs at law of E. C. Ashford, deceased, and for the purpose of foreclosing a mortgage given by said E. C. Ashford during his lifetime to secure the payment of his promissory note for borrowed money. The note and mortgage were made payable to W. C. Sherrod and others, naming them, as school trustees of township 4, range 8 W., from whom the loan of money was obtained. The bill is exhibited in the name of B. T. Etheredge, L. T. Key, and W. C. Bracken, as school trustees of township 4, range 8, Lawrence county, Ala. Under the act approved March 2, 1901 (Acts 1900-01, p. 2070), the complainants became the successors of W. C. Sherrod and others, to whom the note and mortgage were made payable, and the bill, under the act, is properly exhibited in their names as school trustees of township 4, range 8, etc.

The mortgage sought to be foreclosed was given on an undivided interest in certain described lands, "not less than one-fourth" interest, and, with the note which it was given to secure, bore date of March 5, 1880. The facts show that the loan was made and obtained as averred in the bill, and that the interest was paid annually and credited on the note down to and including the year 1896. These interest payments relieved both the note and mortgage from the operation of the statute of limitations, and saved the note from the bar of the statute of 6 years, as also the mortgage given to secure it from the bar as by prescription of 20 years set up as a defense to its enforcement.—Cameron v. Cameron, 95 Ala. 344, 10 South. 506; Code 1896, § 2811, and cases cited; 13 Am. & Eng. Ency. of Law (1st Ed.) 750, 751. There is evidence that tended to prove that the mortgage, when executed and recorded, was neither attested nor acknowledged; but in this case that question is an unimportant one. It was the intention of the parties, as the facts show in the giving of the mortgage, that a lien on the land described should thereby be created to secure the payment of the borrowed money. In such cases, although the instrument may fail as a mortgage in the conveyance of the legal title, still a court of equity will always give effect to such an instrument as an equitable

mortgage, and thus preserve the lien and security which the parties intended should be created.—*Smith v. Hiles-Carver Co.*, 107 Ala. 272, 18 South. 37; *Newlin Finley & Co. v. McAfee*, 64 Ala. 357; 6 Am. & Eng. Ency. (1st Ed.) 675.

It is insisted that the mortgage is void, as to the part of the lands embraced in it known as the "home place," on the ground, as alleged, which is set up by way of defense in the answer, that this part of the land was held adversely by Mrs. Carrie Ashford, the wife of A. E. Ashford, at the time of the execution of the mortgage by E. C. Ashford. The facts show that the title to all of the lands in question, upon the death of the ancestor, Thomas Ashford, in the year 1862, descended to his four children, A. E. Ashford, T. T. Ashford, E. C. Ashford, and Mrs. Bridenthall. The title, of course, was in these four children, heirs at law of Thomas Ashford, deceased, as tenants in common. Upon the death of the ancestor, A. E. Ashford administered upon his estate, and during said administration he was in possession of the lands. In the year 1867 the said A. E. Ashford and his brother, E. C. Ashford, made a private parol agreement to divide the lands between themselves, the said A. E. Ashford taking the part known as the "home place," and E. C. Ashford the part known as the "free and easy place," and each one taking possession of the part so alotted; and all of this was without the assent or agreement of the other heirs, who were tenants in common with A. E. and E. C. Ashford. In 1874 the undivided one-fourth interest of A. E. Ashford was levied on under execution and sold at sheriff's sale; E. C. Ashford becoming the purchaser at said sale for a nominal sum. In 1875 it is claimed that E. C. Ashford sold the interest of A. E. Ashford that he purchased at sheriff's sale to Carrie Ashford, the wife of A. E. Ashford. No record, however, of any such conveyance, was ever made. A. E. Ashford and his wife, Carrie Ashford, continued in the possession of the part of said lands known as the "home place" from the time of the division by A. E. Ashford and E. C. Ashford of the lands to the death of Carrie Ashford, and after her death the said A. E. Ashford continued in the possession. During all the while A. E.

Ashford managed and controlled the farm; but it is claimed that he did so as the agent of his wife, Carrie T. Ashford, during her lifetime subsequent to the time of the alleged sale of the said E. C. Ashford to the said Carrie Ashford. It will be observed that this time covered the date of the execution of the mortgage, to-wit, March 5, 1880.

It must be borne in mind, however, that it is only the undivided one-fourth interest of E. C. Ashford as to which the mortgage is sought to be foreclosed. Unless the adverse possession set up is such as might ripen into title by lapse of time, it is not such as would render the execution of the mortgage void. To constitute adverse possession, it must be open, notorious, under claim of title, and must be exclusive; that is to say, it must be adverse to the whole world. The possession of one tenant in common under the law is the possession of all the tenants, and adverse possession by one tenant in common can never arise until there is an actual ouster of the co-tenant. The private parol agreement of division between E. C. Ashford and A. E. Ashford did not and could not pass a title to the land. A. E. Ashford was at the time in possession of the place known as the "home place," and this act of division and his continued possession of the land did not constitute adverse possession by him as against his co-tenants. The legal title, therefore, remained as it was before. As we said above, there was no notice or record evidence of any sale of the land by E. C. Ashford to Carrie Ashford. There was never such change from the possession of A. E. Ashford to his wife, Carrie Ashford, as would give notice to the world of any claim set up by Carrie Ashford. The facts show that E. C. Ashford, when he borrowed the money in 1880 from the school trustees, represented to said trustees that he, the said E. C. Ashford, held and owned an unincumbered title to an undivided fourth interest in said lands. The facts further show that the said trustees had no knowledge or notice of any claim whatever to said lands by the said Carrie Ashford. Under the facts we feel constrained to hold that the possession of A. E. Ashford was never adverse to his tenants in common; that is to say, that his possession lacked the constituent

.elements necessary to ripen it into title by lapse of time. And we are further of the opinion that there was no such outward change of possession from A. E. Ashford to his wife, Carrie Ashford, as would carry notice of a change of ownership or possession. See *Ashford v. Ashford*, 136 Ala. 631, 34 South. 10, 96 Am. St. Rep. 82; *Stiff v. Cobb*, 126 Ala. 381, 28 South. 402, 85 Am. St. Rep. 38.

The respondents set up the defense of ultra vires to enforcement of the contract. The township commissioners who made the loan were incorporated and chartered as such commissioners, under an act of the Legislature approved January 12, 1826, a copy of which said act is made an exhibit to the answer of A. E. Ashford. By this act the school commissioners were authorized to invest the school funds in certain bank stock, but were not authorized to loan the school money as was done in the present instance. The action of the school commissioners in making the loan, as was done here, was undoubtedly in excess of their powers and authority; but the answer to this defense is that the lack of authority and power on the part of the school commissioners to make the loan was remedied and cured by an act of the Legislature of March 2nd, 1901 (Acts 1900-01, p. 2070), by which the contract of loan was ratified. It cannot be disputed that the Legislature had the power in the first instance to authorize the loan just as it was made. The law is well settled in this state that it is within legislative competency by an act to ratify the doing of that which has already been done, the doing of which it had the power to authorize in the first instance, where no contract rights or vested rights are in any way violated or impaired.—*Ex parte Buckley*, 53 Ala. 54; *Lovejoy v. Beason*, 121 Ala. 605, 25 South. 599.

It is insisted by respondents in argument that the act of 1901 is unconstitutional on two grounds. The first is that it violates section 56, art. 4, of the Constitution of 1875. That section reads as follows: "There can be no law of this state impairing the obligation of contracts by destroying or impairing the remedy for their enforcement, and the General Assembly shall have no power to revive any right or remedy which may have been barred

by lapse of time or by any statute of this state." We are unable to see wherein the obligation of the contract in question has in any manner been impaired by this statute. The statute is a remedial one, affording a remedy for the enforcement of the contract, instead of destroying or impairing the remedy for its enforcement. Such statutes should always receive a liberal construction, and giving it such construction, we are clearly of the opinion that it does not violate any provision of the above section and article of the Constitution.

The second objection is that it is violative of section 2, art. 4, of the Constitution of 1875, which is as follows: "The style of laws in this state shall be, 'Be it enacted by the General Assembly of Alabama.' Each law shall contain but one subject, which shall be clearly expressed in the title, except general appropriation bills and general revenue bills, and bills adopting a Code, digest, or revision of statutes, and no law shall be revised, amended, or the provisions thereof extended on confirmed by reference to its title only, but so much thereof as is revived, amended, or extended or confirmed shall be re-enacted and published at length." The act in question is independent and original in form, and is intelligible without reference to the original act incorporating the school commissioners of township 4, range 8 W., Lawrence county, Ala., and there was no necessity of setting out the original act or any part thereof.—*State ex rel. v. Rogers*, 107 Ala. 444, 19 South. 909, 32 L. R. A. 520; *Birmingham Union Ry. Co. v. Elyton Land Co.*, 114 Ala. 70, 21 South. 314. The title of the act of March 2, 1901, contains in reality but one subject, and in this respect in no way offends constitutional provision. There is nothing in the body of the act which is not cognate or referable to the subject contained in the title.—*City Council of Montgomery v. National Building & Loan Association*, 108 Ala. 336, 18 South. 816; *State ex rel. v. Rogers, supra; Burton v. State*, 107 Ala. 108, 18 South. 284; *Ry. Co. v. Pike County*, 97 Ala. 105, 11 South. 732; *State ex rel. v. McCary*, 128 Ala. 139, 30 South. 641.

The act of March 2, 1901, contains the following provision:

[Courtner v. Etheredge, et al.]

"Sec. 3. That the rights and interests of said school commissioners in all existing contracts and in every species of property of said township are hereby vested in said trustees.

"Sec. 4. That said trustees may exercise the power of sale contained in any and all mortgages or other security held by said school commissioners or vested in them, and may enforce any and all contracts heretofore made by them, any suit or proceeding now pending in the name of said school commissioners may be revived and conducted to final determination in the name of the trustees of said township 4, range 8, Lawrence county, Alabama."

These provisions are sufficiently broad and comprehensive to include the mortgage here sought to be enforced. The language employed in the act, "and may enforce any and all contracts heretofore made by them," receiving that liberal construction which should be applied to such acts, may include not only such contracts as are valid in themselves, but such as may be rendered valid by legislative ratification, and hence sufficient to show an intention on the part of the Legislature in the passage of the act to ratify the contract in question.

From the views above expressed, it follows that the decree appealed from will be affirmed.

Affirmed.

TYSON, C. J., and ANDERSON and McCLELLAN, JJ., concur.