**Annie Mae WILLIAMS,**
**Plaintiff–Appellee,**

**v.**

**HOMESTAKE MORTGAGE CO., Ignacio Goldemberg and Adriana Goldemberg, Defendants–Appellants.**

**No. 89–5163.**

United States Court of Appeals, Eleventh Circuit.

Aug. 14, 1992.

R. Hugh Lumpkin, Keith, Mack, Lewis, Allison & Cohen, Miami, Fla., for defendants-appellants.

Peter H. Barber, Charles M. Baird, Legal Services of Greater Miami, Inc., Miami, Fla., for plaintiff-appellee.

Before FAY and EDMONDSON, Circuit Judges, and HALTOM *, Senior District Judge.

FAY, Circuit Judge:

In this appeal we consider the issue of whether the courts may impose conditions upon the voiding of a creditor's security interest in a rescinded consumer credit transaction pursuant to the Truth in Lending Act, 15 U.S.C. § 1635(b) and Regulation Z, 12 C.F.R. § 226.23(d). For the reasons that follow, we hold that a court may modify the procedures for rescission pursuant

---

* Honorable E.B. Haltom, Jr., Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

to the specific language of the statute and the regulations.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On September 23, 1986, Appellee Annie Mae Williams entered into a consumer credit transaction with Appellant Homestake Mortgage Company ("Homestake") in which Williams incurred an obligation that included a finance charge initially payable to Homestake.[1] As part of the transaction, Homestake retained a security interest in Williams' home.

Williams entered into the loan agreement primarily to obtain the necessary funds to remodel a bathroom and to consolidate pre-existing mortgages on her home into a single mortgage debt providing for one monthly payment. Thus, as part of the transaction, Homestake handed Williams a check for $3,434.73 for remodeling purposes and satisfied the three existing mortgages on Williams' home totalling $19,420.56.

Williams' major concern in entering into the September 23 agreement with Homestake was keeping the monthly mortgage payments roughly equivalent to what they were prior to entering into the agreement. On the three pre-existing mortgages, Williams was paying approximately $460.00 per month. Under the September 23, 1986 agreement, her monthly payments grew to $530.00 per month. Unhappy with the larger monthly payments, Williams eventually sought legal advice and on September 21, 1987, filed this action alleging numerous disclosure violations of the Truth in Lending Act, 15 U.S.C. §§ 1601–1662 (1988) ("TILA" or "Act"), and Regulation Z, 12 C.F.R. §§ 226.1–.1002 (1992).[2]

On October 27, 1987, one month after initiating the present action and one year after entering into the consumer credit transaction with Homestake, Williams delivered a letter to Homestake purporting to rescind the September 23, 1986 agreement. Homestake did not respond to the rescission letter, took no action to reflect the termination of the mortgage, and returned no part of the monthly payments made by Williams.

On April 18 and May 5, 1988, respectively, Homestake and Williams filed cross motions for summary judgment in the district court. Based on the alleged disclosure violations, Williams' summary judgment motion sought: (1) rescission of the consumer credit transaction; (2) statutory damages both for Homestake's failure to disclose necessary information as part of the transaction and for Homestake's failure to respond to Williams' notice of rescission; and (3) reasonable attorneys' fees. In its motion, Homestake conceded that rescission was an appropriate remedy under the circumstances of this case. However, Homestake sought modification of the normal statutory rescission provisions arguing that, in order to effectuate a return of the parties to the status quo ante, the voiding of its security interest in Williams' home should be conditioned upon the return of $12,917.79 [3] that Williams owes in unpaid principal.

On July 29, 1988, the district court entered an order in which Williams' motion for summary judgment was granted and Homestake's motion was denied. The court found that Homestake had committed "three distinct [TILA] disclosure violations: (a) improper disclosure of the effects of rescission, (b) under-statement of the finance charge and (c) failure to disclose all

---

**1.** Homestake assigned its interest in the transaction to Appellants Ignacio Goldemberg and Adriana Goldemberg. Throughout this opinion, the court will refer to all Appellants simply as Homestake.

**2.** Prior to bringing suit and throughout the course of most of the litigation in the district court, Williams remained current on her loan repayments. However, following the district court's order of July 29, 1988 granting her motion for summary judgment, Williams stopped

making the monthly payments. In all, Williams paid $9,937.50 to Homestake.

**3.** Homestake arrives at the $12,917.79 figure by first deducting all finance charges from the $28,300.00 loaned to Williams and then offsetting the $2,000.00 in statutory penalties imposed by the district court and the $9,937.50 Williams paid to Homestake prior to the district court's summary judgment order.

security interests taken." (R41 at 9). Relying on 12 C.F.R. § 226.23(d)(1), *Harris v. Tower Loan of Mississippi, Inc.*, 609 F.2d 120 (5th Cir.), *cert. denied*, 449 U.S. 826, 101 S.Ct. 89, 66 L.Ed.2d 30 (1980), and *Gerasta v. Hibernia Nat'l Bank*, 575 F.2d 580 (5th Cir.1978), the district court then determined that Homestake's " 'status quo ante' argument was addressed and foreclosed by the holdings in the *Harris* and *Gerasta* cases, and by 12 C.F.R. § 226.23(d)." (R41 at 10 n. 10).

Based on its finding that Homestake had committed three disclosure violations and its conclusion that the type of judicial modification requested by Homestake was not contemplated by § 1635(b), the district court declared the consumer credit transaction of September 23, 1986 rescinded upon Williams' written notice to Homestake. Homestake was ordered to immediately terminate its security interest in Williams' home, "with such termination to be fully and effectively reflected in the public records," *id.*, and to pay Williams "$1,000.00 in connection with the disclosure violations and $1,000.00 in connection with the rescission notice violation," *id.*, in addition to reasonable attorneys' fees.

Homestake filed a motion to amend judgment on August 8, 1988, and a motion for leave to file a counterclaim on October 27, 1988. Both motions were denied by the district court's order of February 8, 1989, and Homestake filed a notice of appeal on February 16, 1989.

## II. ISSUES

On appeal, Homestake raises two issues. First, Homestake argues that the district court erred in failing to exercise its authority under 15 U.S.C. § 1635(b) to condition

voiding of the security interest upon Williams' return of the loan proceeds. Second, Homestake argues that the district court abused its discretion in denying Homestake leave to file a counterclaim.[4]

## III. DISCUSSION

We note at the outset that a district court's rulings "on the interpretation and application of [a] statute are conclusions of law subject to de novo review." *Young v. Commissioner*, 926 F.2d 1083, 1089 (11th Cir.1991). The statute at issue in this appeal is 15 U.S.C. § 1635(b).

*Rescission*

In 1968, Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. As part of the Act, Congress provided the consumer with the right to rescind a credit transaction under § 1635(a) solely by notifying the creditor within set time limits of his intent to rescind.[5] Once the consumer exercises his right to rescind, the effect of that decision and the subsequent exchange of property is then governed by 15 U.S.C. § 1635(b), which provides:

> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or other-

---

4. Homestake does not seek review of that part of the district court's order which found three TILA disclosure violations, nor does it seek review of the court's award of reasonable attorneys' fees and $2,000.00 in statutory penalties. These matters are, therefore, not before this court and remain unaffected by our judgment today. Homestake does seek review of the denial of leave to file the counterclaim. We find no abuse of discretion in this ruling as to the untimely request.

5. Rescission under § 1635(a) applies to those transactions in which the creditor retains a security interest, other than a first mortgage, on the consumer's principal residence. The consumer has an absolute right to rescind the agreement for three business days following the finalization of the transaction. Furthermore, the consumer's ability to rescind an agreement may be extended for up to three years if the creditor fails to make all material disclosures, including disclosure of the right to rescind.

wise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

The sequence of rescission and tender set forth in § 1635(b) is a reordering of common law rules governing rescission. Under common law rescission, the rescinding party must first tender the property that he has received under the agreement before the contract may be considered void. 17A Am.Jur.2d *Contracts* § 590, at 600–01 (1991). Once the rescinding party has performed his obligations, the contract becomes void and the rescinding party may then bring an action in replevin or assumpsit to insure that the non-rescinding party will restore him to the position that he was in prior to entering into the agreement, i.e., return earnest money or monthly payments and void all security interests. *Id.* § 604, at 610–13. Under § 1635(b), however, all that the consumer need do is notify the creditor of his intent to rescind. The agreement is then automatically rescinded and the creditor must, ordinarily, tender first. Thus, rescission under § 1635 "place[s] the consumer in a much stronger bargaining position than he enjoys under the traditional rules of rescission." Note, *Truth-in-Lending: Judicial Modification*

*of the Right of Rescission,* 1974 Duke L.J. 1227, 1234 (1974). Furthermore, because rescission is such a painless remedy under the statute (placing all burdens on the creditor), it acts as an important enforcement tool, insuring creditor compliance with TILA's disclosure requirements.

■ Though one goal of the statutory rescission process is to place the consumer in a much stronger bargaining position, another goal of § 1635(b) is to return the parties most nearly to the position they held prior to entering into the transaction. The addition of the last sentence of § 1635(b), stating that "[t]he procedures prescribed by this subsection shall apply except when otherwise ordered by a court," was added by the Truth in Lending Simplification and Reform Act, Pub.L. No. 96–221, tit. VI, § 612(a)(4), 94 Stat. 168, 175 (1980) (codified as amended at 15 U.S.C. § 1635(b) (1988)) ("Simplification and Reform Act"), and is a reflection of this equitable goal. Prior to the statute's amendment,[6] the majority of circuit courts that addressed this issue permitted judicial modification of the statutory rescission process. *Rudisell v. Fifth Third Bank,* 622 F.2d 243 (6th Cir.1980); *Powers v. Sims & Levin,* 542 F.2d 1216 (4th Cir.1976); *Rachbach v. Cogswell,* 547 F.2d 502 (10th Cir.1976); *LaGrone v. Johnson,* 534 F.2d 1360 (9th Cir. 1976); *Palmer v. Wilson,* 502 F.2d 860 (9th Cir.1974). Despite a lack of Congressional sanction for such action, these courts relied on their equity powers to fashion rescission procedures not contemplated by the Act. Only the Fifth Circuit, in precedent which is binding on this court, *see Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (all decisions of the Former Fifth Circuit handed down prior to October 1, 1981 adopted as binding precedent), refused to permit judicial modification where Congress had provided for none. In *Gerasta,* the Fifth Circuit first addressed the issue finding that "the [creditor's] duties are in no way conditional upon the [consumer's] tender of the loan proceeds." 575

---

**6.** The Simplification and Reform Act was enacted on March 31, 1980, and became effective October 1, 1982.

F.2d at 585. The court revisited the issue in *Harris* and again determined that a creditor's duties could not be conditioned upon the consumer's tender. 609 F.2d at 123.

Homestake argues that the Simplification and Reform Act resolved the circuit split against the Fifth Circuit decisions by giving the courts the ability to modify the statutory rescission process, including the ability to condition the voiding of the creditor's security interest upon the consumer's tender.[7] Williams counters that § 1635(b), as it is written today, while permitting some modification, does not permit the type of modification Homestake seeks. Thus, Williams contends that the Simplification and Reform Act does not fundamentally alter the holdings of *Gerasta* and *Harris*. In support of her argument, Williams relies primarily on 12 C.F.R. § 226.23(d) and the great deference given to the Federal Reserve Board in interpreting TILA. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980) ("Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive...."). Section 226.23(d) states:

> (d) *Effects of rescission.* (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void, and the consumer shall not be liable for any amount, including any finance charge.
>
> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
>
> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has

complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

> (4) The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.

Williams reads this section of the regulations to mean that "the court modification provision in subsection (d)(4) applies *only* to subsections (d)(2) and (d)(3) and does *not* apply to the first step of the rescission process, given in subsection (d)(1)." Brief for Appellee at 10. Thus, according to Williams, the voiding of the creditor's security interest, which Williams argues is guaranteed by the mandate of subsection (d)(1), may not be conditioned on the consumer's tender. Although this is technically correct, it is not a realistic recognition of the full scope of the statutory scheme.

Like the statute from which it was drawn almost word for word, § 226.23(d) does basically three things: first, it provides in subsection (d)(1) that rescission is automatic upon the consumer's notice; second, in subsections (d)(2) and (d)(3) it establishes a framework for the exchange of property; and third, in subsection (d)(4), it gives the courts the power to modify that framework consistent with the statutory objective. Subsection 226.23(d)(4)'s acknowledgment that the courts may modify the procedures prescribed in subsections (d)(2) and (d)(3), but not those of subsection (d)(1), is at once, then, both a recognition of the court's

---

7. As part of its argument that the district court erred in failing to condition the voiding of its security interest upon Williams' tender, Homestake contends that the district court has sanctioned a forfeiture of its property. We find this argument wholly without merit. The district court's July 29 summary judgment order does not state that Homestake is no longer entitled to its principal loan amount. Instead, the court's order merely requires Homestake to comply with its duties under the statute.

power to change the statutory framework for effecting rescission and a reaffirmation of the Act's intent to make rescission automatic upon notification. As one commentator has noted:

> Paragraph 1 [of § 226.23(d)] simply recognizes the statutory mandate that rescission is complete at the time of notice. Paragraph 4 restates the power given to courts under § 1635(b) to modify the statutory procedures outlined in paragraphs 2 and 3. Therefore, it is clear that there is no such thing as conditional rescission. Rather, there is simply recognition of the power of the courts to modify the procedure to effect· the rescission.

Daniel J. Morgan, *Rescission Under the Simplification Act: What's New (And Not So New) for Creditors*, 7 Okla.City U.L.Rev. 355, 395 n. 265 (1982).

Where ''the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'' *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). In this instance, Congress, through its legislative history, has made it quite clear that "the courts, *at any time during the rescission process*, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required by the act." S.Rep. No. 368, 96th Cong., 2d Sess. 29 (1980) (emphasis added), *reprinted in* 1980 U.S.C.C.A.N. 236, 265. Furthermore, the plain language of § 1635(b) leaves little room for narrowing the court's ability to modify the process of effecting rescission, as Congress' grant of authority covers all "procedures prescribed by [the] subsection." Thus, we hold that a court may impose conditions that run with the voiding of a creditor's security interest upon terms that would be equitable and just to the parties in view of all surrounding circumstances.[8] By relying on the holdings of *Harris* and *Gerasta*, it appears that the district court mistakenly believed that such modification was outside the scope of its authority. We, therefore, vacate the judgment of the district court and remand the case for consideration of the propriety of conditioning the voiding of Homestake's security interest.[9]

In deciding whether or not to impose conditions upon Williams, the district court should consider traditional equitable notions, including such factors as the severity of Homestake's TILA violations and whether Williams has the ability to repay the principal amount.[10] While the goal should always be to "restor[e] the parties to the status quo ante," *Harris*, 609 F.2d at 123; *Gerasta*, 575 F.2d at 584, rescission must also maintain its vitality as an enforcement tool.

## IV. CONCLUSION

For the reasons set forth above, we VACATE the judgment of the district court and REMAND the case for further proceedings consistent with the views herein expressed.

---

**8.** Insofar as the *Harris* and *Gerasta* decisions restrict a court's ability to modify the statutory procedures for effecting rescission, they are no longer valid in light of the changes that Congress has made to § 1635(b).

**9.** The amended statute gives the courts the authority to restructure these loans. This could range from ordering the immediate return of the full principal amount to leaving the creditor to whatever other legal procedures might be available under state law. District courts might consider the requiring of the execution of substitute security instruments depending upon the

circumstances and the changed status of the parties, i.e., has the bathroom remodeling been completed, etc.

**10.** The fact that Williams stopped making payments on her contract with Homestake does not necessarily indicate an unwillingness to pay, as that contract and her obligation under it were rescinded and declared a nullity by the district court. It should also be remembered that until the district court's judgment, Williams was current on her loan repayments, despite the fact that she was not obligated to make those payments.