**In re Lois Ann MILLER, Debtor.**

No. 04–42087–JSS13.

United States Bankruptcy Court,
N.D. Alabama,
Eastern Division.

Feb. 4, 2005.

Harvey B. Campbell, Jr., Talladega, AL, for Debtor.

Janine L. Smith, Birmingham, AL, for Green Tree Servicing, LLC.

### *ORDER GRANTING GREEN TREE'S MOTION FOR RELIEF FROM AUTOMATIC STAY*

JAMES S. SLEDGE, Bankruptcy Judge.

This matter came on to be heard on the Second Motion for Relief from Automatic Stay (the "Motion") filed by Green Tree Servicing, LLC, formerly known as Conseco Finance Corp.–AL ("Green Tree"), in the above-referenced bankruptcy case. The Motion was filed pursuant to 11 U.S.C. § 362(d) and Federal Rules of Bankruptcy Procedure 4001(a) and 9014. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Present at the hearing were (a) counsel for the debtor

Lois Ann Miller (the "Debtor"); (b) counsel for Green Tree; and (c) the Chapter 13 Trustee. Due notice was given to all parties in interest.

## FACTS

On March 27, 2002, the Debtor and her ex-husband, Ray Miller, also known as Buethyl Ray Miller, Jr. ("Miller"), executed and delivered to Conseco Finance Corp.-Alabama ("Conseco Finance") a note in the amount of Forty–Eight Thousand Two Hundred Dollars and No/100s ($48,200.00) (the "Note") and a mortgage securing the Note (the "Mortgage"). The Mortgage granted a security interest in the Debtor's home located at 1205 Central Avenue, Gadsden, Alabama 35094 (the "Collateral"). The Mortgage on the Collateral was properly recorded in the Office of the Judge of Probate for Etowah County, Alabama. The validity of the Mortgage has only recently been challenged in a complaint filed on January 26, 2005, after the hearing on this Motion. (Doc. No. 61).[1]

Conseco Finance Home Equity Loan Trust 2002–B ("Conseco") is the current holder of the Note and Mortgage. Pursuant to the terms of that certain Pooling and Servicing Agreement, Green Tree is the servicer of the Note and Mortgage.

The Note and Mortgage are the valid and binding obligations of the Debtor and Miller to Conseco and are enforceable against the Debtor and Miller pursuant to their terms. The amount owed under the Note continues to accrue interest at the rate established by the Note. Neither the Debtor nor Miller have made one payment to Green Tree since the Note was executed

in March 2002. Accordingly, the Debtor and Miller are in default of their obligations under the Note. Conseco Finance Home Equity Loan Trust 2002–B continues to have a recorded Mortgage on the Collateral.[2]

On June 21, 2004 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 13 of Title 11, United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") with the Clerk of this Court. The Debtor's Chapter 13 bankruptcy case is currently pending before this Court as Case No. 04–42087–JSS13 (the "Bankruptcy Case"). Prior to the Debtor's filing of the Bankruptcy Case, on February 24, 2004, Green Tree commenced foreclosure proceedings on the Collateral. Before advertising the foreclosure sale, Green Tree gave proper notice to all parties having an interest in the Collateral. The foreclosure sale was set for June 23, 2004. Two days prior to the foreclosure sale, the Debtor filed the Bankruptcy Case.

On the Petition Date, the Debtor filed her Schedules and Statement of Financial Affairs, wherein she declared under the penalty of perjury that the information contained therein was true and correct. The Debtor's Schedules list Green Tree as a creditor holding a secured claim on the Collateral, although the Debtor refers to the claim as being disputed.

On June 22, 2004, the Debtor filed her Chapter 13 Plan Summary. Neither the Plan nor the Plan Summary disclose the debt owed by the Debtor and Miller to Conseco under the Note. The Plan and the Plan Summary also do not propose any

1. In 2002, the Debtor and Miller filed a civil action against Conseco Finance in which they sought to cancel the loan transaction. Due to the filing of Conseco Finance's Chapter 11 bankruptcy case, the civil action was dismissed without prejudice.

2. Green Tree is the servicing agent and is permitted to litigated this matter. *See Greer v. O'Dell,* 305 F.3d 1297 (11th Cir.2002).

payments by the Debtor or Miller to Conseco on the obligations under the Note. On September 18, 2004, Green Tree filed in the Bankruptcy Case its secured Proof of Claim against the Debtor for the indebtedness due under the Note and Mortgage. No objection was ever filed to Green Tree's Proof of Claim.

On September 27, 2004, Green Tree filed a Motion for Relief from Stay and an Objection to Confirmation in the Bankruptcy Case. On September 28, 2004, Green Tree filed an Evidentiary Submission in Support of its Motion for Relief and Objection to Confirmation. The Debtor did not file a response or an objection to Green Tree's Motion for Relief from Automatic Stay. A final hearing was scheduled on Green Tree's Motion for Relief for November 10, 2004. On the day of the hearing, counsel for the Debtor advised the Court that the parties had reached a settlement and Green Tree's Motion for Relief was placed on the administrative docket pending further notice from the parties as to the status. In furtherance of the parties' settlement agreement, Green Tree filed an Amended Proof of Claim in the Bankruptcy Case on November 22, 2004. No objection was ever filed to Green Tree's Amended Proof of Claim. Although the parties had previously reached an agreement, no agreement was filed to execute the settlement agreement. The Court subsequently dismissed the Motion for Relief on December 10, 2004.

The hearing on the current Motion was held on January 5, 2005 and January 6, 2005, and the Court made findings of fact as described herein. The Debtor has lived in the home made the basis of the mortgage for 33 years. The note and mortgage in issue were a refinancing, not a purchase money, mortgage. Most of the loan documents were presented to the Debtor and Miller on the night of the loan closing.

The documents at the loan closing were dated March 27, 2002, but the closing occurred on March 28, 2002 after 2:00 a.m. The branch manager of Conseco, Mr. Chris Galloway, arrived at Ms. Miller's home around 2 a.m. without invitation or notice, and he pressured Ms. Miller, providing her with a number of documents that were either partially filled out or blank, and though she signed them, the signature would not amount to consent. The Court did not find Mr. Galloway to be a credible witness, and his testimony was only believed when it did not conflict with other evidence. At least one document was corrected and sent to the Debtor and Miller the next day. Although the Debtor acknowledges signing the Note, the Mortgage and other loan documents, she denies owing Green Tree the indebtedness evidenced by the Note and Mortgage. Ms. Miller has never made a payment on the loan. Her Chapter 13 plan does not provide for her to pay Green Tree as a secured creditor, but there is a recorded mortgage, in favor of Conseco, signed by the Millers. In addition to the above-noted discrepancies with the Mortgage and Note, the settlement statements and the required Truth–in–Lending disclosures were not accurate, and the mortgage was also not properly notarized. There was no good faith estimate of settlement costs delivered to the Debtor prior to the loan closing, and the documents were either partially filled out or blank at the loan closing.

The principal reflected in the note was $48,200.00 with interest at 13.55% from March 27, 2002. To date, none of the indebtedness has been paid. The real estate has a Fair Market Value of $20,000.00, and the home is currently insured. The payment on the disclosure/settlement statement shown to CitiFinancial was different from the actual payment made. The payment on the settlement statement

was $20,633.19, whereas, the actual payment was $20,302.25. A State Court cause of action was filed seeking to cancel the indebtedness.

The notary acknowledgment on Conseco's Mortgage was brought into question by the Debtor at the time of the hearing. The former branch manager of the Conseco Finance office that closed the loan, Chris Galloway, testified that the notary who acknowledged the signatures of the Debtor and Miller on the Mortgage did not actually witness the Debtor and Miller execute the Mortgage.[3] The former branch manager is a notary and did witness the Debtor and Miller execute the Mortgage. However, the former branch manager did not notarize the Mortgage, and the Mortgage was not witnessed by two individuals in lieu of the notary acknowledgment. Mr. Galloway's testimony about the acknowledgment was uncontested.

The Debtor also acknowledges receiving the loan proceeds after the closing, both in the form of having various debts belonging to the Debtor and Miller being paid off and in cash proceeds. At some point in time within three days of the loan closing, the Debtor attempted to rescind the loan transaction by executing and delivering to Conseco the Notice of Right of Rescission. Ms. Miller's right of rescission was timely exercised by returning the Notice via UPS in the package sent to her by Conseco and required to be returned to the creditor before the checks were disbursed. Notwithstanding the timely rescission, Conseco disbursed the checks.

The Debtor's loan with Green Tree was never cancelled. Upon default of the Debtor's and Miller's obligations under the Note, Green Tree brought this action to enforce its rights in and to the Collateral.

To evidence the debt owed on the Note, the Debtor and Miller executed and delivered to Green Tree a Mortgage on the Collateral. Both Green Tree, the Debtor and Miller intended to execute a Mortgage on the Collateral. However, the Mortgage was not properly attested to as required under Alabama law.

At the conclusion of the hearing, the parties were ordered to file post-hearing briefs on the issues before the Court. Green Tree's brief was due to be filed with the Court on January 18, 2005. The Debtor's brief was due to be filed with the Court on January 24, 2005. On January 20, 2005, Green Tree filed a Motion to Extend Deadline to File Post–Hearing Brief. In the Motion to Extend, Green Tree stated that the parties were extremely close to reaching a settlement and requested additional time to negotiate the terms of the agreement. The Debtor did not oppose Green Tree's Motion to Extend and, in fact, filed her own Motion to Extend Deadline to File Post–Hearing Brief on January 21, 2005. The Court entered an Order on January 21, 2005 extending the time for both parties to file post-hearing briefs to January 24, 2005.

## ISSUES PRESENTED FOR ADJUDICATION

The Court has before it the issues of a) whether Green Tree has a valid and enforceable Mortgage on the Collateral; b) whether the loan transaction should be rescinded if the Mortgage is found to be invalid; c) whether Green Tree would have an equitable mortgage on the Collateral if the Mortgage is found to be invalid; and d) whether Green Tree would have an

---

**3.** Green Tree subpoenaed Christopher Galloway ("Galloway") to appear and testify at the hearing. Galloway did not appear in these proceedings as a corporate representative on behalf of Green Tree Servicing, LLC or any of its affiliated subsidiaries.

equitable lien on the Collateral if the Mortgage is found to be invalid.

## I. *Green Tree Has a Valid and Enforceable Mortgage on the Collateral.*

The validity of Green Tree's Mortgage is not addressed in this Order since there will be a separate adversary proceeding to make that determination. At issue in these proceedings is the Motion filed by Green Tree to enforce its rights in and to the Collateral. In support of the Motion, Green Tree submitted an Evidentiary Submission and presented the Court with evidence, including live testimony. In defense to the Motion for Relief, the debtor challenges whether Movant has an enforceable interest in the residence.

 Green Tree's property interest in the Collateral is governed by Alabama law. *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). Alabama courts have recognized two types of mortgages: legal mortgages, in which legal title is transferred to the mortgagee and equitable mortgages, which convey only a lien and not a title interest. *Greene v. The Associates (In re Matter of John W. Greene),* 248 B.R. 583, 608 (Bankr.N.D.Ala. 2000). Under Alabama law, instruments conveying land must be attested by a witness, or, where the conveying party cannot write, by two witnesses; or it must be acknowledged by a notary or some other officer provided for by law. Code of Alabama (1975) §§ 35–4–20, 35–4–23, and 35–4–24. In order for an acknowledgment to be effective, it must clearly identify the person or persons who executed the conveyance, and the person signing the instrument must have appeared before the notary or other officer and acknowledged that

he signed the instrument. *Thomas v. Davis,* 241 Ala. 271, 2 So.2d 616, 619–20 (1941); *Fies & Sons v. Lowery,* 226 Ala. 329, 147 So. 136 (1933).

 Where it is alleged that an acknowledgment in a deed is insufficient, the burden of proof is on the person attacking the validity of the certificate of acknowledgment. *Henslee v. Henslee,* 263 Ala. 287, 82 So.2d 222, 225 (1955). The certificate of a notary is presumptively correct, and the evidence necessary to impeach it must be clear and convincing. *Id.* At the hearing, the correctness of the notary acknowledgment on the Mortgage was impeached through the testimony of the former branch manager that he, rather than the notary who attested to the Debtor and Miller's signatures on the Mortgage, witnessed the Debtor and Miller execute the Mortgage. If the issue concerning the validity of the Mortgage were before this Court, it is likely that the Court would conclude that the Mortgage was not properly notarized as required under Alabama law and the Mortgage would then be invalid to transfer legal title in the Collateral to Green Tree. That issue, however, is not before the Court in these proceedings.

 The Debtor did not file a response or an objection to the Motion. At the time of preparing this proposed order, neither the Debtor, nor the Chapter 13 trustee nor any other party having an interest in the Collateral had filed an action against Green Tree seeking to declare the Mortgage invalid and set it aside.[4] An unperfected lien remains valid until the trustee or debtor in possession avoids it. *See generally In re Crawley,* 318 B.R. 512, 515 (Bankr.W.D.Wis.2004). If no action is taken to avoid the lien, the creditor remains entitled to the benefits of it and may

---

4. An adversary proceeding was filed by the Debtor after hearings on this matter were

concluded and the dispute was submitted to the Court.

be able to enforce it after the Bankruptcy Case has been concluded. Until the pending action to avoid the lien is decided, Green Tree continues to have a valid and enforceable security interest in the Collateral.

## II. *Rescission of the Debtor's Loan Transaction Must be Conditioned Upon Return of the Loan Proceeds Disbursed by Green Tree.*

 Assuming that the validity of the Mortgage is attacked in a subsequent legal proceeding, and the Mortgage is found to be invalid, the next inquiry will likely be whether or not the loan transaction between the Debtor, Miller and Green Tree should be rescinded. Rescission is an equitable remedy and courts may condition its allowance upon the borrower's return of those funds advanced by the creditor. *Rudisell v. Fifth Third Bank,* 622 F.2d 243 (6th Cir.1980); *LaGrone v. Johnson,* 534 F.2d 1360, 1361–62 (9th Cir.1976); *Palmer v. Wilson,* 502 F.2d 860, 862 (9th Cir.1974).

 When a mortgage is invalid and the mortgagor files a bill in equity to have it vacated on that account, relief will be denied him unless he restores the consideration which he received from the mortgagee. *Rhodes v. Schofield,* 263 Ala. 256, 82 So.2d 236, 239 (1955). Even if this court were to find the Mortgage invalid, such that it is incapable of conveying legal title to the Collateral to Green Tree, Green Tree would continue to have an equitable interest in the Collateral and such an interest will not be vacated unless and until the Debtor and Miller repay the loan proceeds they received as a result of executing the Note and Mortgage.

The provisions of the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), provide a clear and detailed analysis of the parties' obligations to each other should they later find themselves in a legal proceeding to set aside the mortgage.[5] Pursuant to § 1635 of TILA, when a creditor takes a security interest in property which is used as the principal residence of the consumer, the consumer has the right to rescind the transaction until the end of the third business day following the transaction or until the creditor delivers to the consumer the information, notification of rescission forms and disclosure statement as required by the Act, whichever is later. 15 U.S.C. § 1635(a). When a consumer exercises his right of rescission, § 1635(b) of TILA provides that the consumer is discharged from liability for any finance or other charge, and any security interest which has been taken becomes void. 15 U.S.C. § 1635(b). Moreover, within 20 days, the creditor must return any money given as a down payment, earnest money, or the like, and must take appropriate steps to terminate any security interest created. *Id.* Once the creditor has performed these obligations, the consumer must tender the property obtained by the loan or its reasonable value. *Id.*

 Although TILA provides that in the event of a rescission the lender has to perform first (in other words, give back the borrower's money and release the security interest before the borrower has to give back the lender's money), "the Act gives the court discretion to devise other procedures, ... including conditioning rescissions upon the debtor's prior return of the principal." *Federal Deposit Ins. Corp. v. Hughes Development Co., Inc.,* 938 F.2d 889 (8th Cir.1991). Many cases, like

---

**5.** The Court recognizes there are no claims under the Truth In Lending Act at issue in these proceedings.

*Hughes,* have conditioned rescission on the borrower's paying back the money. *See Williams v. Homestake Mortgage, Co.,* 968 F.2d 1137 (11th Cir.1992); *Rudisell v. Fifth Third Bank,* 622 F.2d 243 (6th Cir. 1980). This idea seems applicable in the current case since the debtor's plan makes no provision for paying obligations that had been rescinded. In *Williams,* Debtor Williams entered into a credit obligation with Homestake Mortgage Company to consolidate her pre-existing mortgages and to obtain extra funds for home remodeling. Homestake gave Williams a $3,434.73 check and satisfied the other three mortgages, but because Williams' monthly payment significantly increased, she filed a cause of action alleging violations of the Truth in Lending Act. About a year after the original contract had been signed with Homestake, Williams sent a letter to the mortgagee rescinding the agreement. Cross motions for summary judgment were filed, with Williams seeking rescission of the consumer credit transaction, statutory damages for Homestake's failure to respond to her notice of rescission, and attorneys' fees. Homestake also sought rescission but argued that after voiding the security interest, Williams should be required to return the remaining amount owed on the principal. Williams' motion for summary judgment was granted, and Homestake's motion was denied, thus leading to this appeal. Under 15 U.S.C. § 1635(a), it is clear that the consumer can rescind a credit transaction by notifying the creditor within three days following the business transaction, and possibly up to three years after the agreement was extended if the creditor failed to disclose all material information, including the right to rescind disclosure. The United States Court of Appeals vacated and re-

manded the district court's judgment, holding that under 15 U.S.C. § 1635(a) and (b), once a consumer rescinds the transaction, the security interest becomes void, and the creditor must return the money or property within 20 calendar days either at the location of the property or at the consumer's residence. Once the creditor has complied, the consumer must tender the money or property to the creditor at the creditor's place of business. The Court restated Congress's legislative history that says, "the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required by the act." *Williams,* 968 F.2d at 1142. Thus, the district court did have the authority to restructure the loan, such as requiring the immediate return of the full principal amount and giving the creditor any available legal procedures under state law, or even allowing the creditor to execute a substitute security instrument. *Id.*

The documents and testimony presented to this Court during the hearing demonstrate that there is no question regarding the following facts. In March 2002, the Debtor and Miller executed and delivered the Note to Conseco. The principal amount of the Note was $48,200.00. The parties to this transaction intended that the loan be secured by a mortgage on the Collateral. At the time the Debtor and Miller executed the Note, Green Tree Financial Corporation had a second mortgage on the Collateral.[6] CitiFinancial had a first mortgage on the Collateral. After the closing, the loan proceeds were disbursed to or on behalf of the Debtor and Miller in the following manner: 1) Green

---

**6.** Green Tree Financial Corporation, the holder of the second mortgage on the Collateral in March 2002, is a wholly separate and distinct

entity from Green Tree Servicing, LLC, the creditor involved in these proceedings.

Tree issued a check to CitiFinancial in the amount of $20,302.25 to pay off the first mortgage on the Collateral[7]; 2) Green Tree issued a check to Green Tree Financial Corporation in the amount of $14,536.70 to pay off the second mortgage on the Collateral; and 3) as evidenced by the amended Settlement Statement, Green Tree also issued checks totaling $11,088.51 to several of the Debtor and Miller's other creditors to pay various debts and obligations of the Debtor and Miller existing at the time of executing the Note and mortgage.

The Debtor and Miller received total cash proceeds in the amount of $2,006.30, to be used by the Debtor and Miller in any manner as they saw fit.[8] Based upon these transactions, there can be no doubt that the Debtor and Miller both applied for the loan and received its full benefit. There is also no question that the parties intended to create a mortgage on the Collateral to secure the obligations on the Note.

It matters not to the Court that the examples patterned here all arise in the context of claims arising under TILA. If Green Tree must forfeit its security interest in the Collateral which was taken to secure and evidence the obligation of the Debtor and Miller under the Note, it is only equitable that the Debtor and Miller must likewise return the proceeds of the loan that were acquired as a result of the loan transaction. The result would be no different if the Debtor and Miller had executed a Note and a properly attested Mortgage, and then pursuant to § 1635(a) of TILA the Debtor and Miller executed and delivered to Green Tree within the prescribed time period the Notice of Right of Rescission. 15 U.S.C. § 1635(a). Pursuant to the provisions of § 1635(b), Green Tree would then be required to release its Mortgage on the Collateral and also return any payments made by the Debtor on the debt. 15 U.S.C. § 1635(b). Once Green Tree fulfills its obligation, and before the loan is actually rescinded, the responsibility would then shift to the Debtor and Miller to return to Green Tree the money they received in connection with the loan. *Id.*

Neither the Debtor nor Miller have made one payment on the Note since its inception in March 2002. Therefore, the issue of whether or not Green Tree would have to return payments to the Debtor and Miller if the Mortgage was found to be invalid is not implicated by the facts in this matter. The evidence before this Court does, however, merit that if the Court later finds the Mortgage to be invalid, the rescission of the Debtor and Miller's loan transaction will be conditioned upon the return to Green Tree of those loan proceeds disbursed after the closing. In this way, the parties will be most nearly returned to their respective pre-transaction positions.

### III. Even if the Mortgage is Invalid, Green Tree Continues to Have an Equitable Mortgage on the Collateral.

As is the case with determining the effect of a legal mortgage, the

---

**7.** At the hearing, the Debtor presented evidence from CitiFinancial that the payoff amount on the Debtor's account was $20,302.25. Green Tree's records indicate that a check in the amount of $20,633.15 was issued to CitiFinancial to pay off the Debtor's account.

**8.** Evidence at the hearing revealed that Green Tree issued the Debtor and Miller a check in the amount of $1,298.00. Due to the insurance on the Collateral having been renewed by the Debtor prior to Green Tree's payment of the $708.00 premium to Foremost, after the loan closing Foremost Insurance sent the Debtor and Miller a refund check in the amount of $708.00.

determination of whether an equitable mortgage exists is controlled by Alabama law. *In re Matter of John W. Greene*, 248 B.R. at 583. When a mortgage is invalid due to a technical defect, equity will give effect to the intent to the parties according to the substance of the transaction. *Central Bank of the South v. Dinsmore*, 475 So.2d 842, 846 (Ala.1985), *citing Lewis v. Hickman*, 200 Ala. 672, 77 So. 46, 49 (1917). More specifically, "[a] mortgage instrument which lacks proper attestation or acknowledgment will be given effect as an equitable mortgage." *Id. citing Courtner v. Etheredge*, 149 Ala. 78, 43 So. 368 (1907).

An equitable mortgage may be constituted by any writing from which the intention of the parties to create a mortgage to secure the debt of the mortgagor or the debt of another may be gathered. *Bishop v. McPherson*, 232 Ala. 594, 168 So. 675, 678 (1936). Further, it is not necessary that "the instrument relied upon to show an equitable mortgage was either acknowledged or attested." *Id.* As the Alabama Supreme Court stated in *Murphy v. Carrigan*, 270 Ala. 87, 116 So.2d 568, 571 (1959), "whenever a transaction resolves itself into a security, or an offer or attempt to pledge land as security for a debt or liability, equity will treat it as a mortgage, without regard to the form it may assume ... [a]lthough the conveyance in question may lack the formal requisites of a mortgage, or be expressed in inapt or untechnical language, equity will look to substance and give effect to the intention of the parties."

If the Court was to decide in a later proceeding that the Mortgage is invalid and voidable, the Mortgage would not necessarily be void. *See Anderson v. Delta Funding Corp.*, 316 F.Supp.2d 554 (N.D.Ohio 2004). The Mortgage would not be due to be cancelled or vacated until the

Debtor and Miller make restitution to Green Tree for the loan proceeds they received. *Constantine v. United States Fidelity and Guaranty Company, Inc.*, 545 So.2d 750, 752 (Ala.1989) (citing, *Montgomery v. Parker Bank and Trust Co.*, 256 Ala. 20, 53 So.2d 566 (1951)). In concluding that Green Tree would have an equitable mortgage on the Collateral, the Court relies on the four requirements articulated by the Alabama Supreme Court in *Murphy*: (1) the mortgagor has a mortgageable interest in the property sought to be charged as security; (2) there is clear proof of the sum which the mortgage was to secure; (3) there is a definite debt due from the mortgagor to the mortgagee; and (4) the intent of the parties to secure the debt by mortgage, lien, or charge on the property. 116 So.2d 568 (1959); see also *Hall v. Livesay*, 473 So.2d 493, 494 (Ala. 1985); *Barnett v. Waddell*, 248 Ala. 189, 27 So.2d 1 (1946); *Jones v. Stollenwerck*, 218 Ala. 637, 119 So. 844 (1928).

Each of the aforementioned requirements are present in these proceedings and support this Court's finding that Green Tree retains an equitable mortgage on the Collateral. At the time of executing the Mortgage, the Debtor and Miller had a mortgageable interest in the Collateral. The Mortgage was executed for the purpose of securing the debt due under the Note, as is evidenced on the face of the Mortgage. Pursuant to the terms of the Note and Mortgage, a definite debt is due and owing from the Debtor and Miller to Green Tree. Further, there can be no doubt that the Debtor and Miller had every intention of conveying a Mortgage to Green Tree on the Collateral to secure the debt evidenced by the Note.

A reasonable inference from the evidence presented at the hearing is that the Debtor and Miller benefitted from the funds they received and which were dis-

bursed to various creditors for their benefit. Accordingly, if the Mortgage is eventually found to be invalid, the Mortgage may be enforced in equity, and Green Tree will have an equitable mortgage on the Collateral until the Debtor and Miller restore to Green Tree the consideration they received from the loan.

### IV. *In the Alternative, Green Tree Has an Equitable Lien on the Collateral.*

Because an adversary proceeding has been filed to determine whether or not Debtor and Miller intended to create a mortgage on the Collateral with Green Tree, the Court feels it necessary to announce the result if the evidence shows, which it does not necessarily, that neither the Debtor nor Miller intended to grant Green Tree a mortgage on the Collateral. Whether or not a mortgage is a legal mortgage or an equitable mortgage is in part a fact-based inquiry to determine the intent of the parties. However, an equitable lien is created, regardless of intent, as a remedial device to protect a party against inequitable loss and to prevent unjust enrichment. *In re Financial Federated Title and Trust, Inc.,* 347 F.3d 880 (11th Cir.2003). Typically, courts will create an equitable lien in the absence of intention where unjust enrichment would otherwise result. *Id.*

Testimony at the hearing revealed that the signatures on the Mortgage were made by the Debtor and Miller at the closing and the proceeds of the loan benefitted the Debtor and Miller by, among other things, satisfying the first mortgage and second mortgage on the Collateral in existence at the time of the closing. While the Court finds that the Debtor executed and delivered to Green Tree the Notice of Right of Rescission, the Debtor and Miller acknowledged receipt of the loan proceeds

after the closing. If this Court were to conclude that Green Tree does not at least have an equitable lien on the Collateral, an unjust and inequitable result would surely occur. Once the Debtor and Miller repay the loan proceeds to Green Tree, the Mortgage would then be capable of being declared void and set aside.

### CONCLUSION

Based on the foregoing, the Court orders that because the Debtor has failed to provide Adequate Protection of Conseco's interest in the property, such failure constitutes cause for lifting the Automatic Stay.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Motion for Relief from Stay is **GRANTED.**